OPINION {¶ 1} Defendant-appellant, James B. Strunk, appeals the decision of the Warren County Court of Common Pleas convicting him of two counts of receiving stolen property, three counts of money laundering and one count of engaging in a pattern of corrupt activity. We affirm the trial court's decision.
 {¶ 2} Appellant is the owner of a construction business. In early May 2005, appellant was asked by an employee of his business if he was interested in purchasing a used 42-inch *Page 2 
plasma television. Appellant purchased the television for $1,300. At the same time, the Springboro Police Department was investigating the theft of a television, laptop computer and other items from a residence in Springboro. Detective Tim Parker of the Springboro Police Department identified appellant's employee as a suspect and interviewed him about the theft. The employee admitted that he stole the television and stated that he had sold it to appellant. The employee volunteered to wear a wire for the police to get appellant to make a statement that he knew the television was stolen.
 {¶ 3} Parker contacted the Warren County Drug Task Force to assist with the operation since appellant lived outside of Parker's jurisdiction and the task force had the proper undercover equipment. Working under cover, Det. Dan Schweitzer of the task force and the informant drove to appellant's residence on May 10, 2005. The informant went into appellant's residence to obtain the evidence while Det. Schweitzer remained in the car. The informant returned to the car and indicated to Det. Schweitzer that he had been successful in recording appellant's statement. The informant then indicated that appellant might be interested in buying a Rolex watch. Appellant was standing in his garage and waived for Det. Schweitzer to speak with him. The informant introduced Det. Schweitzer as Jason Miller, the man who helped him get the television and "the guy who can get you whatever you need." Appellant then took the men into his house to show them where he installed the television. Following a conversation, appellant indicated that he was not interested in a Rolex watch but would be interested in new furniture for his house. At the end of the conversation, Schweitzer told appellant he would get back to him about furniture.
 {¶ 4} On May 19, the detective and the informant returned to appellant's residence. They delivered a brand new loveseat, still wrapped in plastic with a tag for $1,155. Appellant wrote Det. Schweitzer a $200 check for the loveseat. The men then sat around appellant's garage to talk. Appellant stated that he would be interested in more furniture. Det. *Page 3 
Schweitzer also brought photographs of an RTV and a tractor to see if appellant would be interested, but appellant declined. Appellant proceeded to tell a story from when he was in college where appellant claimed to have given a friend $20,000 for drug trafficking and received $40,000 a few days later in return. Det. Schweitzer then asked if appellant would be interested in participating in that type of activity again, but the conversation was dropped.
 {¶ 5} On May 27, Det. Schweitzer returned to appellant's residence to further discuss funding of a drug transaction, but no definitive arrangements were made. Appellant though did request another loveseat and also a bedroom suite. On May 31, Det. Schweitzer went to appellant's residence once again. The two talked in more detail about a possible drug transaction. Appellant then told Det. Schweitzer a story about his former employment overseas. He stated that he would have his salary deposited into a Cayman Island bank account and would withdraw only $9,000 at a time to not raise any "red flags." Appellant also described that this strategy could be used to "wash" up to $100,000 per year through his construction business.
 {¶ 6} On June 17, Det. Schweitzer delivered the second loveseat. It was also brand new with a $1,169 price tag. Appellant's wife wrote a $300 check for the loveseat. Det. Schweitzer once again brought up the drug transaction, but appellant did not seem interested. The men once again discussed money laundering.
 {¶ 7} On June 20, the men met again at appellant's residence and talked in greater detail about money laundering. Appellant stated that he had laundered money in the past. Det. Schweitzer proposed that he would give appellant $10,000 cash and, in return, appellant would write a check for $9,000. Appellant stated that all of the transactions would be filtered through his business and appellant would write off the transactions as if Schweitzer were a sales consultant. Appellant also requested that Det. Schweitzer complete a 1099 tax form to make the transactions appear legitimate. *Page 4 
 {¶ 8} On June 21, the first money laundering transaction occurred. Det. Schweitzer gave appellant $10,000 in pre-recorded bills and appellant wrote a $9,000 check, which the detective cashed. Det. Schweitzer informed appellant that the money was coming from his friend, the "weed man." The second money laundering transaction took place on June 28 and Det. Schweitzer once again proposed a drug transaction. On July 7, appellant provided the detective with a W-9 tax form to fill out to legitimize the appearance of the transactions. On July 13, a third money laundering transaction took place. During this transaction, appellant wrote a $9,000 check, but also gave the $10,000 cash back to Det. Schweitzer to fund a drug deal. Det. Schweitzer returned to appellant's residence on July 19 to give $20,000 to appellant for the drug deal and appellant was arrested afterward.
 {¶ 9} Appellant was indicted on three counts of receiving stolen property in violation of R.C. 2913.51(A), three counts of money laundering in violation of R.C. 1315.55(A)(5), one count of aggravated funding of drug trafficking in violation of R.C. 2925.04(A)(3), and one count of engaging in a pattern of corrupt activity in violation of R.C.2923.32(A)(1).
 {¶ 10} The case proceeded to a jury trial on March 14, 2006. When giving jury instructions, the trial judge instructed the jury on entrapment for the drug trafficking charge only and did not give an entrapment instruction for the receiving stolen property, money laundering, or corrupt activity charges. Appellant was found guilty on the two counts of receiving stolen property for the purchase of the loveseats, the three counts of money laundering, and the count of engaging in a pattern of corrupt activity. Appellant was found not guilty of one count of receiving stolen property and funding of drug trafficking.
 {¶ 11} Appellant was sentenced to a total prison sentence of ten years: six months in prison for each count of receiving stolen property, to run consecutively; three years for each count of money laundering, to run consecutively to each other and to the sentences for receiving stolen property; and five years for engaging in a pattern of corrupt activity to run *Page 5 
concurrent to the other sentences. Appellant was also fined $8,000: $1,000 for each money laundering count and $5,000 for engaging in a pattern of corrupt activity. Appellant timely appealed, raising three assignments of error.
 {¶ 12} Assignment of Error No. 1:
 {¶ 13} "THE TRIAL COURT ERRED BY FAILING TO INSTRUCT THE JURY ON THE AFFIRMATIVE DEFENSE OF ENTRAPMENT, EXCEPT ON COUNT VII, WHERE THERE WAS SUBSTANTIAL EVIDENCE TO SUPPORT THE DEFENSE."
 {¶ 14} Appellant argues in his first assignment of error that the trial court erred in failing to instruct the jury on entrapment for the receiving stolen property charges, the money laundering charges and the charge of engaging in a pattern of corrupt activity.
 {¶ 15} A determination as to which jury instructions are proper is a matter left to the sound discretion of the trial court. State v.Guster (1981), 66 Ohio St.2d 266, 271. We review the trial court's refusal to give the requested jury instructions under an abuse of discretion standard. State v. Wolons (1989), 44 Ohio St.3d 64, 68. An abuse of discretion connotes more than merely an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. State v. LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128,¶ 40.
 {¶ 16} Crim.R. 30(A) requires a trial court to "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact-finder."State v. Comen (1990), 50 Ohio St.3d 206, paragraph two of the syllabus. In reviewing the record to ascertain the presence of sufficient evidence to support the giving of a proposed jury instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction.State v. Risner (1997), 120 Ohio App.3d 571, 574. However, a trial court does not err in failing to instruct the jury on an affirmative defense where the evidence is *Page 6 
insufficient to support the instruction. State v. Melchior (1978),56 Ohio St.2d 15, 21-22.
 {¶ 17} Entrapment is an affirmative defense that a defendant has the burden of proving by a preponderance of the evidence R.C. 2901.05(A);State v. Doran (1983), 5 Ohio St.3d 187, paragraph two of the syllabus. Entrapment exists "where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute." Id. at paragraph one of the syllabus. In order to establish entrapment, the defendant admits participation in the criminal activity but attempts to excuse that conduct by claiming the criminal design originated with government officials. Id.
 {¶ 18} However, there is no entrapment when government officials merely afford opportunities or facilities for the commission of the offense to a criminal defendant who was predisposed to commit the offense. Id. at 192. Where a person is ready and willing to break the law, the fact that government officials provide a means to do so is not entrapment. Id. The relevant factors to consider when determining a defendant's predisposition to commit the offense include: "1) the accused's previous involvement in criminal activity of the nature charged; 2) the accused's ready acquiescence to the inducements offered by the police; 3) the accused's expert knowledge in the area of the criminal activity charged; 4) the accused's ready access to contraband; and 5) the accused's willingness to involve himself in the criminal activity." Id. The defendant asserting the entrapment defense must adduce evidence supporting his lack of predisposition to commit the offense. Id.
 {¶ 19} Appellant argues that substantial evidence of entrapment was introduced on each count at issue. Appellant urges that "Det. Schweitzer was the instigator of the contacts and that appellant was extremely reluctant to continue the relationship." Appellant also argues that he was acquitted of the first count of receiving stolen property which was "the fundamental assumption of the sting operation." Finally, appellant argues that he was found *Page 7 
not guilty of the only count in which the jury was permitted to consider the entrapment defense.
 {¶ 20} Before charging the jury with instructions in this case, the trial judge held "there is no evidence of entrapment for any other of the counts, let alone a preponderance of the evidence, so I will give an instruction as to entrapment in Count VII (aggravated funding of drug trafficking) only." Because entrapment is an affirmative offense, the trial judge is not required to give an instruction of entrapment to the jury where the defendant has not provided evidence of entrapment.
 {¶ 21} After a full review of the record, we find there was no abuse of discretion by the trial judge for failing to give an entrapment instruction. As to the receiving stolen property charges, it is clear from the record that appellant exhibited a predisposition to commit the crimes and Det. Schweitzer was merely affording opportunities. After the discussion with the informant on May 10, appellant waved for Det. Schweitzer to come into his garage to talk. Appellant invited Det. Schweitzer into his home. The informant introduced Det. Schweitzer as "the guy who can get you whatever you need." Appellant cites that Det. Schweitzer offered to sell him a zero-turn lawnmower, a Rolex watch, and an RTV, which he turned down. Appellant claims these offers were evidence of entrapment. Appellant indicated to the detective that he had no use for those items, but suggested that he would be interested in purchasing loveseats and other furniture for his home. Appellant showed his willingness to engage in the activity by accepting the loveseats, never questioning where they were obtained from, even though they were sold to him at a price significantly less than the price indicated on the tag. Appellant also claims the initiation of the contact by Det. Schweitzer is also evidence of entrapment. "Where a person is ready and willing to break the law, the fact that government agents provide what appears to be a favorable opportunity to do so is not entrapment as a matter of law." State v. Couch, Butler App. No. CA2001-06-132, 2002-Ohio- *Page 8 
3347. The contact initiated by the detective and the offers made to appellant in this case are merely opportunities provided to appellant and not evidence of entrapment.
 {¶ 22} Similarly, the evidence demonstrates appellant was predisposed to money laundering. On May 31, appellant described the tax scheme he engaged in while working overseas. Appellant stated that he had his income deposited into a Cayman Island bank account and he would withdraw the money $9,000 at a time, rather than $10,000, because he stated the government would notice if the amount was $10,000 or more. Appellant volunteered this information; he was not prompted by any act of Det. Schweitzer. Appellant also volunteered that he had the ability to "wash" up to $100,000 each year through his company and that he had previously engaged in laundering money through his company. Det. Schweitzer did not provoke appellant to provide this information, appellant voluntarily discussed his knowledge and history of money laundering.
 {¶ 23} Appellant demonstrated expert knowledge of money laundering. After appellant first described his ability to wash $100,000 through his company, Det. Schweitzer asked if appellant would be interested in laundering money for him. Unaware of typical money laundering transactions, Det. Schweitzer first suggested a two-for-one scheme where he would give appellant $10,000 cash and appellant would give Det. Schweitzer a $5,000 check. Appellant stated this is not the typical ratio for money laundering transactions and that they should talk again once Det. Schweitzer talked to his "friend" about the amount of money. At the next meeting Det. Schweitzer proposed a scheme where he would give appellant $10,000 cash and appellant would give him a $9,000 check in return. Appellant responded that this was the common ratio for money laundering transactions from his past experience.
 {¶ 24} Appellant also showed a willingness to engage in money laundering. Appellant claims that the money laundering transactions he engaged in with Det. Schweitzer are a common, legitimate business practice in the construction industry. But, appellant was told by *Page 9 
Det. Schweitzer that the money came from "a friend" who Det. Schweitzer also referred to as his "weed man." In the statement appellant made following arrest, appellant admitted that he knew the money was from marijuana sales. Appellant also required Det. Schweitzer to fill out a W-9 tax form to appear that Schweitzer had worked as a sales consultant for appellant's business, even though the detective did not engage in any business with the company. Appellant readily performed three money laundering transactions, stating they were "the easiest $1,000 he ever made" to the detective. Before the laundering transactions began, Det. Schweitzer typically initiated the meetings with appellant, but afterwards appellant initiated each contact with Det. Schweitzer on a weekly basis.
 {¶ 25} Appellant testified at trial in his own defense. Appellant's defense was that he was unaware that the loveseats were stolen. Appellant testified about his interactions with Det. Schweitzer, but did not admit participation in the criminal activity. The position appellant testified to regarding the receipt of stolen property was that he purchased the loveseats believing Det. Schweitzer had a "friend in the furniture business" who was selling the loveseats for a discount. This defense testimony was not evidence of entrapment; rather, his defense was that he did not have reasonable cause to believe that the property was stolen, a question for the jury regarding the knowledge element of the crime of receiving stolen property.
 {¶ 26} Similarly with regard to the money laundering charges, appellant claimed that the transactions were legitimate. Appellant did not admit he engaged in illegal money laundering or that the money laundering was implanted in his mind by the detective. Instead, appellant testified that these types of transactions were common in the construction industry. Appellant testified that he was unaware the money he was laundering was the proceeds of drug sales. Because entrapment is an affirmative defense, the defendant first admits participation in the criminal activity, and then attempts to excuse the conduct by claiming the *Page 10 
criminal design originated with government officials. Doran at 192. Appellant's testimony at trial was not evidence of entrapment; his defense was based on the claims that he did not know the furniture was stolen and that the money laundering was legitimate.
 {¶ 27} Due to the above analysis, we also believe the trial court did not err by refusing to give an entrapment instruction for engaging in a pattern of corrupt activity.
 {¶ 28} Finally, appellant claims that the multiple crimes are a result of a single sting operation. He argues that since he was found not guilty on the first charge of receiving stolen property, he should receive an entrapment instruction for each of the other charges. Appellant's argument is unpersuasive. Det. Schweitzer merely provided several opportunities for appellant to engage in criminal activity and appellant readily acquiesced.
 {¶ 29} Based on the foregoing evidence, the trial judge concluded that appellant did not present evidence of entrapment and refused to give an instruction accordingly. After a review of the record, we find the trial court did not err by denying the entrapment instruction for the receiving stolen property charges, the money laundering charges and charge of engaging in a pattern of corrupt activity. Appellant's first assignment of error is overruled.
 {¶ 30} Assignment of Error No. 2:
 {¶ 31} "THE JURY'S CONVICTION OF STRUNK ON COUNTS TWO AND THREE, RECEIVING STOLEN PROPERTY, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN STRUNK WAS NOT `EXPLICITLY INFORMED THAT THE PROPERTY WAS STOLEN."
 {¶ 32} Appellant argues his convictions for receiving stolen property were against the manifest weight of the evidence because the loveseats were not explicitly represented as "stolen" by Det. Schweitzer.
 {¶ 33} In considering a manifest weight of the evidence challenge, an appellate court reviews the entire record, weighing the evidence and all reasonable inferences that can be *Page 11 
drawn from it, and considers the credibility of witnesses, to determine whether in resolving conflicts in the evidence, "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quotingState v. Martin (1983), 20 Ohio App.3d 172. In reviewing a manifest weight of the evidence claim, an appellate court is obligated to consider the credibility of the witnesses and the weight to be given the evidence presented. Id. However, these issues are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230.
 {¶ 34} R.C. 2913.51, states in pertinent part as follows:
 {¶ 35} "A) No person, shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through the commission of a theft offense.
 {¶ 36} "B) It is not a defense to a charge of receiving stolen property in violation of this section that the property was obtained by means other than through the commission of a theft offense if the property was explicitly represented to the accused person as being obtained through the commission of a theft offense."
 {¶ 37} "In a case where goods are not actually obtained by theft, the issue becomes one of interpreting the evidence to determine whether it satisfies the requirement of `explicit representation.'" State v.Awad, 164 Ohio App. 3d 528, 2005-Ohio-5861,¶ 11. "Absent an admission by a defendant, the question of whether there was reasonable cause for defendant to know if an item was stolen can only be shown by circumstantial evidence." State v. White, Clermont App. No. CA2002-07-161, 2003-Ohio-2011,¶ 14, citing State v. Hankerson (1982), *Page 12 70 Ohio St.2d 87, 92.
 {¶ 38} Appellant argues that the loveseats were not "explicitly" represented to him as stolen and, therefore, his conviction is against the manifest weight of the evidence. The jury was required to find that appellant had "reasonable cause to believe that the property had been obtained through the commission of a theft offense." R.C. 2913.51(A). We find the jury did not clearly lose its way in finding appellant guilty of receiving stolen property. The loveseats still had tags indicating a price that was significantly more than appellant paid for them. The informant told appellant that Det. Schweitzer was "the guy who can get you whatever you need." Det. Schweitzer told appellant that he got the loveseats because he had a friend "on the inside" at a furniture store and that he took the loveseat "right off the back of a truck." Det. Schweitzer made numerous statements that the loveseats were "hot." Det. Schweitzer admitted that it would be hard to get appellant a black loveseat because it was a "hot" color. When he delivered appellant the second loveseat, Det. Schweitzer stated that "[it] is so hot, that it should be burning," and that "it's hotter than dog shit." Det. Schweitzer testified that the first time he used the term "hot," he meant "popular," but in reference to the second loveseat, Det. Schweitzer explained that he used "hot" to mean "stolen."
 {¶ 39} Whether the property was explicitly represented as stolen is a question for the jury to decide. Based on the evidence presented in this case, and the instructions on the law, the jury determined that appellant was guilty of receiving stolen property. We hold that the verdict was not against the manifest weight of the evidence. Appellant's second assignment of error is overruled.
 {¶ 40} Assignment of Error No. 3:
 {¶ 41} "THE TRIAL COURT ERRED BY RENDERING A SENTENCE WHICH CONSTITUTED, AT LEAST IN PART, PUNISHMENT FOR EXERCISING STRUNK'S RIGHT TO A JURY TRIAL." *Page 13 
 {¶ 42} Appellant argues in his third assignment of error that the trial judge punished him for exercising his right to a jury trial. Appellant claims that the "very harsh sentence" imposed by the trial court was an abuse of discretion because the judge indicated a great deal of impatience with the duration of the trial and the judge stated that appellant has not taken responsibility for the crimes. At sentencing, appellant stated, "I would like to tell you how sorry I am and how I made a mistake and how it will never happen again." The trial judge replied, "Leniency is for those who take responsibility. You have taken no responsibility."
 {¶ 43} Clearly a criminal defendant cannot be punished for exercising his constitutional right to trial. State v. O'Dell (1989),45 Ohio St.3d 140. This court reviews a trial court's imposition of a sentence for an abuse of discretion. State v. Jackson, Clermont App. No. CA2003-09-81, 2004-Ohio4153. We also note that where a sentence is within the statutory limits, we cannot hold that the trial court abused its discretion by imposing a more severe sentence. State v. Coyle (1984),14 Ohio App.3d 185, 186.
 {¶ 44} After a thorough review of the record, we cannot conclude the trial court abused its discretion in sentencing appellant. Appellant's sentence was within the statutory limit. While it is true that appellant made a statement of apology for his conduct, it is equally true that the trial court considered appellant's statement of remorse and found it to be less than genuine. A trial court may consider an offender's showing of remorse, but the court is not required to accept such statement as true and may comment accordingly. State v. Davis, Summit App. No. 23102, 2006-Ohio-4723,¶ 7. In the instant matter, the record is clear that the trial court considered Appellant's statement and rejected it, as is within its sound discretion. Appellant's third assignment of error is overruled.
 {¶ 45} Judgment affirmed.
 YOUNG and BRESSLER, JJ., concur. *Page 1