OPINION
{¶ 1} Defendant-appellant, Peter K. Staples, appeals from his conviction and sentence in the Butler County Court of Common Pleas on one count of felonious assault in violation of R.C. 2903.11(A)(1).
 {¶ 2} On August 19, 2005, Larry D. Weber went to Chris Staples' house on Campbell Avenue in the city of Hamilton, Ohio, at about 7:00 p.m. Sometime after 8:00 p.m., Weber *Page 2 
left Chris' house and saw 12 to 14 or more people on the street in front of Chris' residence. Weber knew at least three of the persons he saw: (1) appellant, who is Chris' nephew; (2) Dawn "Nikki" Staples, who is appellant's sister; and (3) Kandy Staples, who is appellant and Nikki's mother and who was married to Chris' brother.
 {¶ 3} As Weber was trying to get to his car, he was stopped by appellant, who told him he was "about to take the biggest ass whipping for that big mouth bitch girlfriend of yours that you've ever imagined." Weber understood appellant's remark as a reference to a belief held by appellant and other members of his family that Weber's ex-girlfriend had either provided some information or took some other action that had led to Kandy's mother, and appellant and Nikki's grandmother, Doris Turner, being sent to prison.
 {¶ 4} Before Weber could respond, appellant placed him in a choke hold and punched him from behind. Weber threw appellant off of him, but then saw Kandy coming at him from across the street with a large knife in her hand. Weber also saw Nikki walking towards him with one of her hands behind her back. When Kandy lunged at him with the knife, Weber tried to kick the knife out of her hand, causing Kandy to jump back. When Weber turned to see where Nikki was, he was struck in the face with a half-full beer bottle. At that point, Chris threw Weber into his (Weber's) car. As Weber drove off, appellant kicked Weber's automobile.
 {¶ 5} Weber went to the home of his ex-girlfriend and told her what had happened. She then drove him to Fort Hamilton Hospital. Weber's injuries included a serious cut on the area of his left ear, and a seriously injured jaw that had been broken in several places. Weber was subsequently transferred to Miami Valley Hospital in Dayton, Ohio, where he underwent surgery to repair his broken jaw. Weber spent two and one-half days at Miami Valley Hospital, in addition to the six or eight hours he had already spent at Fort Hamilton Hospital. *Page 3 
 {¶ 6} While he was still at Fort Hamilton Hospital, Weber was interviewed by Hamilton Police Department Officer Cliff Heidorn. Weber told Officer Heidorn that several persons had assaulted him, including appellant, Nikki, and Kandy. Weber subsequently told Hamilton Police Detective Mark Nichols that although other persons had struck him at the time of the incident, appellant, Nikki, and Kandy were the primary aggressors in the attack.
 {¶ 7} On December 21, 2005, appellant, Nikki, and Kandy were indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony. Appellant was also indicted on one count of criminal damaging or endangering in violation of R.C. 2909.06(A)(1), a second-degree misdemeanor.[1]
 {¶ 8} On August 14-16, 2006, appellant, Nikki, and Kandy were tried together by a jury, with each of the three co-defendants being represented by a different attorney. At trial, the state proceeded on the theory that the three co-defendants were complicit in committing the offense of felonious assault against Weber.[2] To prove its case, appellee presented the testimony of Weber, Officer Heidorn, and Detective Nichols, who testified to the facts related above.
 {¶ 9} In his defense, appellant first presented the testimony of Chris Staples who testified that Weber came to his house on the day of the incident, sometime in the early afternoon, and that he and Weber abused several different types of prescription medications, smoked marijuana, and drank beer. Chris testified that when Weber left Chris' residence to *Page 4 
go home, Weber saw a group of young persons with Mohawk haircuts, and told them they looked ridiculous or "something like that." Chris testified that this group started throwing things at Weber, and then came over and "kind of beat [Weber] down." Importantly, Chris began his testimony by stating appellant, Nikki, and Kandy were not present at the time of this incident.
 {¶ 10} Appellant also presented the testimony of Chris' wife (and appellant's aunt), Judy Staples, who testified that her husband and Weber did get drunk and "stoned" on August 19, 2005. She also testified that appellant came to her and Chris' home at about 2:00 p.m. or 2:30 p.m. that same day, but upon his arrival, she asked him to leave because of her husband's and Weber's condition. Judy testified that appellant left soon after he had arrived, as she had requested.
 {¶ 11} Appellant then presented the testimony of his wife, Jamie, who testified that on August 19, 2005, she and appellant drove to the residence of appellant's brother at around 2:00 p.m. to take him to work by 4:00 p.m. When asked why they picked up appellant's brother at 2:00 p.m. when he did not have to be at work until 4:00 p.m., Jamie answered, "We just were driving around. We decided to go there and pick him up a little early." Jamie testified that after dropping off appellant's brother at work, she and appellant arrived at the house of their friend, Gwen Harden, around 4:30 p.m., where they stayed the rest of the night.
 {¶ 12} Appellant also presented the testimony of Harden, who corroborated part of Jamie's testimony by stating that on August 19, 2005, appellant and Jamie came to her house sometime after 4:00 p.m. to play an on-line role playing game called "Dark Age of Camelot." Appellant also presented the testimony of Harden's fiancée, Quentin Sawyer, who testified that on August 19, 2005, appellant was at his and Harden's residence around 6:00 p.m. to 6:30 p.m. to participate in the Dark Age of Camelot on-line game. Sawyer testified *Page 5 
that the game ended at 9:00 p.m. and appellant and Jamie stayed at his and Harden's residence the rest of the night.
 {¶ 13} The jury found appellant not guilty of the criminal damaging or endangering charge, but found him and Nikki guilty of the felonious assault charge. The jury deadlocked on the felonious assault charge against Kandy.
 {¶ 14} At his sentencing hearing, appellant, through his attorney, offered "a confession of sorts" to the trial court. Specifically, he admitted to the court that he had been involved in "a brief physical altercation" with Weber outside of the Staples' house on August 19, 2005, but that the incident occurred at approximately 3:00 p.m. to 3:30 p.m. rather than at approximately 8:00 p.m., as Weber had claimed. He also acknowledged that "his actions instigated what had happened," but insisted that he "was not involved in the actions that caused [Weber's] broken jaw."
 {¶ 15} The trial court found that appellant "displays absolutely no remorse[,] * * * only [concern] for his safety while being incarcerated," and that he "secured alibi witnesses to come into this court and testify to information that he knew at least the circumstances of which involving the timing were absolutely false." The court also found that appellant's "confession of sorts" was "insincere" and "highly suspect[,]" and further stated, "quite honestly, I don't find it to be mitigating whatsoever. I'm disgusted."
 {¶ 16} The trial court noted that it did not want to accuse appellant of presenting "false alibi testimony" because "[t]hat might be too strong." However, the court did express the view that appellant had "involved himself in an attempt to defraud the justice system by putting on testimony as to alibi witnesses [that he knew was false,] at least as to the timeline."
 {¶ 17} The trial court stated that prior to the sentencing hearing, it "believed that [appellant] should receive a minimum term of incarceration in prison if he were to receive *Page 6 
any." However, the court found that "[b]ased upon the information that has been presented, the timing of the information, and having considered once again [appellant's] lack of remorse and his minimization of his involvement and lack of insight into his conduct, I'm not certain at all at this point in time that a minimum term is appropriate."
 {¶ 18} The trial court then sentenced appellant to four years in prison for his conviction on the felonious assault charge, adding that the sentence it imposed on appellant "reflects much restraint by the Court."
 {¶ 19} Appellant now appeals, assigning the following as error:
 {¶ 20} "THE TRIAL COURT'S ENHANCEMENT OF APPELLANT'S SENTENCE, BASED UPON HIS ADMISSION OF GUILT FOLLOWING A JURY TRIAL IN WHICH HE HAD PRESENTED AN ALIBI DEFENSE, IS CONTRARY TO LAW, UNSUPPORTED BY CLEAR AND CONVINCING EVIDENCE, AND AN ABUSE OF DISCRETION."
 {¶ 21} Appellant essentially argues that the trial court erred by giving him an increased sentence based on the court's belief that he attempted to defraud the justice system by presenting alibi testimony he knew to be false. He asserts that he merely "exercised a constitutionally-protected trial right to assert an alibi defense," and that the alibi testimony he presented was "truthful." We disagree with this argument.
 {¶ 22} A trial court has full discretion to impose a prison sentence within the statutory range, and need not make findings or give reasons for imposing maximum, consecutive, or non-minimum sentences. State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, paragraph seven of the syllabus. "To impose an appropriate sentence, a trial court may review any pre-sentence investigation report, statements by the defendant, statements by the victim, or any other evidence in the record."State v. Cockrell, Fayette App. No. CA2006-05-020, 2007-Ohio-1372, ¶ 23, citing State v. Mathis, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 37.
 {¶ 23} A trial court may consider a defendant's remorse or lack thereof in determining *Page 7 
the appropriate sentence to impose on the defendant. See State v.Strunk, Warren App. No. CA2006-04-046, 2007-Ohio-683, at ¶ 44 (a trial court may consider an offender's showing of remorse, but is not required to accept such showing as true, and may comment accordingly).
 {¶ 24} In reviewing a sentence imposed on a criminal defendant, an appellate court must apply the abuse of discretion standard.Strunk, 2007-Ohio-683 at ¶ 43. A sentencing court abuses its discretion only when the court's decision is unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157. Where a sentence is within the statutory limits, a reviewing court cannot hold that the trial court abused its discretion by imposing a more severe sentence. Strunk at ¶ 43, citing State v. Coyle (1984),14 Ohio App.3d 185, 186.
 {¶ 25} An "alibi" is "[a] defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time." Black's Law Dictionary (8th Ed. 2004) 79. An "alibi witness" is one "who testifies that the defendant was in a location other than the scene of the crime at the relevant time[,]" or "a witness who supports the defendant's alibi." Id. at 1633.
 {¶ 26} At trial, Weber testified that appellant, Nikki, and Kandy attacked him sometime after 8:00 p.m. on August 19, 2005. Appellant acknowledged that Weber had been attacked on August 19, 2005. However, appellant presented testimony from Chris Staples showing that the attack had taken place sometime in the afternoon of August 19, 2005, rather than after 8:00 p.m. that night. Specifically, Chris testified that Weber arrived at his house sometime in the early afternoon of August 19, 2005, and the two of them began using illegal drugs and drinking beer. Chris testified that when Weber left his residence to go home, he was attacked by a group of young persons with Mohawk haircuts, who Weber had allegedly insulted.
 {¶ 27} Chris began his testimony by stating that appellant, Nikki, and Kandy were not *Page 8 
present at the time Weber was attacked outside of his house on August 19, 2005. However, appellant admitted at the sentencing hearing that he was not only present at the time Weber was attacked, but that he was the one who instigated the attack. Appellant's admissions at the sentencing hearing clearly showed that Chris' testimony that appellant was not present at the time Weber was attacked was false, and that appellant knew it was false.
 {¶ 28} Appellant also presented the testimony of Chris' wife, Judy, who testified that appellant did come over to her and Chris' home at around 2:00 p.m. or 2:30 p.m. on August 19, 2005, but left immediately afterwards at her request because Chris and Weber were drunk and "stoned." The inference that the defense sought to have the jury draw from this testimony was that appellant had left the scene of the crime sometime around 2:00 p.m. or 2:30 p.m. at the latest, and, therefore, was not around at the time Weber was attacked. However, appellant's admissions at the sentencing hearing clearly showed that this inference was false, and that appellant knew it was false.
 {¶ 29} Appellant also presented the testimony of his wife, Jamie, who testified that on August 19, 2005, she and appellant went to appellant's brother's residence at 2:00 p.m. to take him to work at 4:00 p.m., and after dropping off appellant's brother at work around 4:00 p.m., she and appellant went to a friend's house and stayed there until the next morning. However, once again, appellant's admissions at the sentencing hearing clearly showed that Jamie's testimony that appellant was with her from 2:00 p.m. on August 19, 2005, until sometime the next day, was false, and that appellant knew it was false.
 {¶ 30} Consequently, appellant was not merely exercising his "constitutionally-protected trial right to assert an alibi defense," nor was he simply presenting "truthful" alibi testimony, as he has claimed.
 {¶ 31} Appellant also asserts that "[w]hat the trial court believed had occurred * * * was not that [he] had perjured himself, but rather that [he] had suborned perjured testimony from *Page 9 
others" (emphasis sic) and, therefore, "had committed the unindicted offense of Complicity to Perjury." Appellant asserts that a trial court abuses its discretion when it considers uncharged offenses in sentencing a criminal defendant because it interferes with the defendant's right to trial. We find this argument unpersuasive.
 {¶ 32} The trial court increased appellant's sentence on the basis that appellant, by his own admission, was involved in the felonious assault against Weber but had sought to evade taking any responsibility for that offense by having several persons testify that he was not present when the offense occurred or that he was elsewhere when the offense occurred. The trial court also took into account appellant's lack of remorse, his minimization of his involvement in the offense, and his lack of insight into the seriousness of his misconduct in sentencing him to four years in prison.
 {¶ 33} In State v. Jeffers (1978), 57 Ohio App.2d 107, the First District Court of Appeals held that "a sentencing judge may not increase a defendant's penalty because the court believed he lied. To do so is in effect to punish him for an offense for which he has been neither charged nor tried and to discourage a defendant from exercising his right to trial and to testify on his own behalf." Id. at 109, citingScott v. United States (C.A.D.C.1969), 419 F.2d 264 and Poteet v.Fauver (C.A.3, 1975), 517 F.2d 393.
 {¶ 34} However, Jeffers was subsequently disapproved by the Ohio Supreme Court in State v. O'Dell (1989), 45 Ohio St.3d 140, wherein the court stated in pertinent part:
 {¶ 35} "The United States Supreme Court disapproved of Scott andPoteet, supra, [i.e., the authority upon which Jeffers relied] inUnited States v. Grayson (1978), 438 U.S. 41, and noted that it has long been proper for the sentencing court to consider evidence heard during the trial as well as the demeanor of the accused. The court further observed that the defendant's truthfulness or lack thereof while testifying on his own behalf is `* * * probative of his attitudes toward society and [his] prospects for rehabilitation * * *.' Id. at 50. While a *Page 10 
defendant is guaranteed the right to a trial and should never be punished for exercising that right or for refusing to enter a plea agreement, there is no federal or state constitutional right to lie on the witness stand. A defendant's act of lying while under oath is probative of his prospects for rehabilitation. Such an act is one of the factors that a trial judge may consider when imposing sentence under R.C. 2929.13. The applicable statutes do not preclude the sentencing court from considering serious misbehavior by a defendant as observed by the sentencing court during trial. In our view, this position does not inhibit a defendant's exercise of the right to testify."O'Dell, 45 Ohio St.3d at 147, quoting Grayson, 438 U.S. at 50.
 {¶ 36} Appellant argues that the principles in O'Dell do not apply to his case because he did not testify at his trial, and, therefore, did not lie on the witness stand. However, we believe this case is no different in principle from cases where the trial court finds that a defendant has lied under oath while on the witness stand, testifying in his own defense.
 {¶ 37} When appellant admitted at his sentencing hearing that he was present at the time Weber was attacked, he was tacitly admitting he had presented false testimony at trial when he presented the testimony of Chris and Judy Staples, and that of his own wife, Jamie, who either said or implied that appellant was not present at the time Weber was attacked. Under these circumstances, the trial court neither erred nor abused its discretion when it took this "serious misbehavior" into account when it imposed a four-year prison sentence on appellant. SeeO'Dell, 45 Ohio St.3d at 147.
 {¶ 38} In light of the foregoing, the trial court did not abuse its discretion or otherwise err in imposing a four-year prison sentence on appellant. See R.C. 2929.14(A)(2) (sentencing range for second degree felonies is from two to eight years), and Strunk at ¶ 43, citingCoyle, 14 Ohio App.3d at 186 (where sentence is within statutory limits, reviewing court cannot hold that trial court abused its discretion by imposing a more severe sentence).
 {¶ 39} Appellant's sole assignment of error is overruled. *Page 11 
 {¶ 40} Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.
[1] The criminal damaging or endangering charge arose as a result of Weber's allegation that appellant kicked Weber's vehicle and beat it with a brick on the day of the incident.
[2] {¶ a} R.C. 2923.03 states in pertinent part:
{¶ b} "No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
{¶ c} "(1) Solicit or procure another to commit the offense;
{¶ d} "(2) Aid or abet another in committing the offense[.]
{¶ e} "* * *
{¶ f} "(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense." *Page 1