**[Cite as *State v. Wendling*, 2022-Ohio-496.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29074 |
| | : | |
| v. | : | Trial Court Case No. 2020-CRB-843 |
| | : | |
| EUGENE WENDLING | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of February, 2022.

. . . . . . . . . . .

STEPHANIE L. COOK, Atty. Reg. No. 0067101 and ANDREW D. SEXTON, Atty. Reg. No. 0070892, City of Dayton Prosecutor's Office, 335 West Third Street, Room 390, Dayton, Ohio 45402
      Attorneys for Plaintiff-Appellee

ADAM JAMES STOUT, Atty. Reg. No. 0067714, 5335 Far Hills Avenue, Suite 109, Dayton, Ohio 45429
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant Eugene Wendling appeals from his convictions for soliciting and loitering to engage in solicitation following a jury trial in the Dayton Municipal Court. Wendling contends his convictions must be reversed because the trial court improperly instructed the jury. He also contends the convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶ 2} For the reasons that follow, we conclude that Wendling's assignments of error are without merit. Accordingly, the judgment of the trial court is affirmed.

## I.     Facts and Procedural History

{¶ 3} On February 27, 2020, the Dayton Police Department conducted a prostitution sting operation in the area of More Avenue and East Third Street. That area, which is a mix of commercial and residential properties, is known as a high prostitution area. On this date, Dayton Police Officer Keri Lightle was working undercover as a decoy. Wendling was arrested after an encounter with Lightle.

{¶ 4} On February 28, 2020, Wendling was charged by complaint in the Dayton Municipal Court with one count of soliciting in violation of R.C. 2907.24(A)(1), one count of loitering to engage in solicitation in violation of R.C. 2907.241(A)(2), and one count of loitering to engage in solicitation in violation of R.C. 2907.241(A)(4). The matter proceeded to a jury trial.

{¶ 5} At trial, Lightle testified on behalf of the State. According to Lightle, Wendling was driving a vehicle southbound on More Avenue when he pulled up to the curb where she was standing, approximately 30 feet from the stop sign located at the

intersection of More Avenue and East Third Street. Lightle testified that Wendling rolled down the passenger-side front window, leaned toward her, and made eye contact with her. She testified that she then approached the vehicle, at which point she heard the door unlock and observed Wendling make a motion for her to get into the vehicle. Wendling opened the door but did not get into the vehicle. She then said, "Hey, what's going on?" Tr. p. 51. Lightle testified that Wendling indicated he wanted her to accompany him to his home on Park Lane.[1] Lightle testified that she asked him what he had in mind, to which he replied, "head," which Lightle testified meant oral sex. Tr. p. 47. Lightle then suggested the amount of $20, and Wendling agreed. Lightle directed him to go to a nearby alley. The two continued to converse, and Lightle eventually stated that she would get her bag and meet him in the alley. Lightle testified that she was wearing a wire during the sting in order to audio-record her interactions with the individuals she encountered. She testified that the audio-recording designated as State's Exhibit 1 was an accurate record of her entire exchange with Wendling, with no modifications made to the recording.

{¶ 6} The audio recording corroborated Lightle's testimony. At the start of the recording, Lightle could be heard saying, "testing, testing." Prior to the exchange between Lightle and Wendling, there were recordings of Lightle addressing several other people. There were periods of time between each interaction during which the ambient street noise was all that could be heard on the recording. At approximately the 17-minute mark on the recording, the exchange between Lightle and Wendling began. After the

---

[1] Wendling testified that his home was approximately ten to twelve miles north of where he encountered Lightle.

initial greeting, Lightle asked Wendling what he was doing. Wendling stated that he lived on Park Lane and asked if she wanted to go there. Lightle stated that she could not go that far and then asked Wendling what he had in mind. Wendling responded, "head." Lightle then asked, "20 bucks?" Wendling responded, "I'll give you $20." Lightle then told Wendling to accompany her into the alley, but he said he could not; he also said he could not get caught and again asked her to go to his home. He mentioned that he was clean and sober. Lightle again told him she could not travel that far. She then stated, "if you want to do a blow job for $20 I'll meet you down here." Wendling again stated he did not want to get caught. Lightle asked him where he wanted to go, and Wendling again mentioned his home; he also mentioned his sobriety again and informed her he had a past history of heroin and crack use. Lightle then told him to meet her "up here," and stated she would get her bag. She then repeated, "twenty dollars, blow job." Wendling replied, "yep."

{¶ 7} Wendling also testified at trial. When asked why he was in the area of the encounter, Wendling testified he had been at an AA meeting on East Third Street, approximately 10 blocks away. He testified that he had attended daily AA meetings at that location for the past three years. Wendling further testified that, on the morning of the encounter, he had attended the meeting and discussed with another member that a third member, a woman, had relapsed and become a prostitute. He testified he left the meeting and went to a thrift store and a pawn shop before driving toward a restaurant for breakfast. Wendling stated that he was on More Avenue when he noticed a girl who looked like the person he had been discussing during his AA meeting; Wendling asserted that he turned around and went back to check. He indicated that he then stopped at the

stop sign and looked at the woman; he realized he did not know the woman on the street, and then he "waved her off." Tr. p. 67. He also testified that his car window had not been rolled down and that Lightle had initiated contact with him when she opened his car door.

{¶ 8} When defense counsel asked why he kept mentioning his address during the exchange, Wendling stated he "wasn't going to do it in no [sic] alley and [ ] wasn't going to do it no matter what." Tr. p. 69. He then stated, "well, I don't know if I would have or not." *Id.* Defense counsel then asked why he mentioned "getting caught," and Wendling testified that he had previously received a citation for trespassing when he was caught parked in a turnaround area at the airport while he was in his car with his sister's friend. He also testified that he told Lightle about his issues with sobriety because he knew prostitutes were usually addicted to drugs and he wanted to give her numbers to call for help with that issue.

{¶ 9} Wendling also testified that the recording played for the jury did not capture the entirety of his conversation with Lightle. Specifically, he told the prosecutor during cross-examination that he also spoke to Lightle prior to the exchange the jury heard. The prosecutor then played a brief, hard-to-hear conversation which began at the 15-minute mark. After listening to it, Wendling asserted that this conversation had also involved him. According to Wendling, during this conversation he told Lightle he had been at an AA meeting and was heading to a restaurant for breakfast. He testified that he asked Lightle whether she wanted to go. He also testified that he also told her he had mistaken her for someone else.

{¶ 10} Wendling was found guilty of all charges, and the trial court sentenced him

accordingly. Wendling appeals.

## II. The Convictions were Supported by the Evidence

{¶ 11} We begin with Wendling's second assignment of error, which states:

THE DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 12} Although this assignment of error is framed in terms of a manifest weight argument, Wendling argues in his brief that his convictions were based upon insufficient evidence and were against the manifest weight of the evidence because he was induced to solicit Lightle.

{¶ 13} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

{¶ 14} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more

believable or persuasive." (Citation omitted.) *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. In assessing such an argument, the appellate court reviews " 'the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *Wilson* at ¶ 14.

{¶ 15} "Though different legal concepts are involved, if a verdict is supported by the manifest weight of the evidence, the evidence, by necessity, is legally sufficient." (Citation omitted.) *State v. Broadus*, 2d Dist. Montgomery No. 28650, 2021-Ohio-19. ¶ 11.

{¶ 16} Wendling was convicted of soliciting, which is prohibited by R.C. 2907.24(A)(1).[2] That statute provided, "[n]o person shall solicit another who is eighteen years of age or older to engage with such other person in sexual activity for hire." "Solicitation requires the accused to have solicited, rather than agreed, to engage in sexual activity for hire." *State v. Short*, 2017-Ohio-7200, 144 N.E.3d 1037, ¶ 28 (2d Dist.), citing *State v. Bennett*, 1st Dist. Hamilton Nos. C-140507, C-140508, 2015-Ohio-

---

[2] The soliciting statute was amended effective April 2021, after Wendling was convicted. Thus, all references in this assignment of error are to the prior version of the statute, which was in effect at all times relevant to this case.

3246, ¶ 9, citing *State v. Swann*, 142 Ohio App.3d 88, 90, 753 N.E.2d 984 (1st Dist.2001). "Solicit" is defined as "to entice, urge, lure or ask." *State v. Swann*, 142 Ohio App.3d 88, 89, 753 N.E.2d 984 (1st Dist.2001), quoting 4 Ohio Jury Instructions Section 507.24 (1997). "Sexual activity for hire" is defined as "an implicit or explicit agreement to provide sexual activity in exchange for anything of value paid to the person engaging in such sexual activity * * *." R.C. 2907.24(E)(2).

{¶ 17} Wendling was also convicted of loitering to engage in soliciting in violation of R.C. 2907.241(A)(2) and (4). That statute states, in pertinent part,

(A) No person, with purpose to solicit another to engage in sexual activity

for hire and while in or near a public place, shall do any of the following:

* * *

(2) Engage or attempt to engage another in conversation;

* * *

(4) If the offender is the operator of or a passenger in a vehicle, stop, attempt

to stop, beckon to, attempt to beckon to, or entice another to approach or

enter the vehicle of which the offender is the operator or in which the

offender is the passenger[.]

{¶ 18} Wending contends that the State did not present evidence sufficient to support his convictions. Specifically, he asserts that the evidence demonstrated that he did not solicit Lightle to engage in sexual activity for hire because he did not make an offer to Lightle. In support, he claims the facts in this case were similar to the facts in *State v. Howard*, 7 Ohio Misc.2d 45, 455 N.E.2d 29 (M.C.1983) and *State v. Swann*, 142 Ohio App.3d 88, 753 N.E.2d 984 (1st Dist.2001), wherein it was determined that the

defendants in those cases did not solicit, but merely agreed to conduct suggested by the police.

{¶ 19} This court has previously analyzed *Howard* and *Swann* as follows:

In *Swann*, a Cincinnati police officer was patrolling for evidence of prostitution. A second officer was hidden in the trunk of the unmarked car. Upon seeing Swann walking down the street, the officer pulled to the curb and engaged Swann in conversation. The officer then invited Swann into his car, where their discussion initially was not of a sexual nature. The officer then offered Swann crack or money for oral sex, and they finally agreed on a price of $15.00. At that point, the second officer in the trunk emerged and arrested Swann.

The First District determined that "Swann did not 'entice, urge, lure or ask' the officer for anything. She simply agreed to his suggestion." In reversing the trial court's judgment and discharging Swann from further prosecution, the First District relied upon *State v. Howard*, 7 Ohio Misc.2d 45, 455 N.E.2d 29 (1983). In *Howard*, an undercover policeman approached Howard near the curb and asked if he was "dating." Howard asked if the officer had any money, and the officer indicated he did, and he asked Howard what he would "do." Howard responded that he would "do" anything. The officer asked him if he would perform oral sex, and after Howard agreed and got into the car, he was arrested.

The court determined, "the defendant in this case did not entice, urge, lure or ask for money in return for sexual performance. What

defendant did was agree to what the officer had suggested and as such he cannot be found guilty of soliciting, an offense unlike some other offenses where entrapment is raised, where the crime is in the asking."

The Tenth District discussed *Swann* and *Howard*, stating:

> In determining that the defendants in *Swann* and *Howard* were not guilty of soliciting, the courts stated that, in a soliciting case, the crime is in the asking. However, these courts did not limit soliciting cases to situations where a defendant explicitly asks for sexual activity for hire, as appellant suggests. Instead, the courts in *Swann* and *Howard* recognized that soliciting may also involve a defendant enticing, urging or luring another to engage in sex for hire. Likewise, the courts in *Swann* and *Howard* did not exonerate the defendants on the basis that the undercover law enforcement officers, and not the defendants, suggested the particular sexual activity and price. Rather, these courts concluded that the defendants were not guilty of soliciting because they merely agreed to the law enforcement officers' advances and did nothing more that rose to the level of enticing, urging, luring or asking the officers to engage in sex for hire.

(Citations omitted.) *State v. Short*, 2017-Ohio-7200, 144 N.E.3d 1037, ¶ 29, 30 (2d Dist.).

{¶ 20} In *Short*, after discussing *Swann and Howard*, we "rejected the contention that a person accused of soliciting must not only offer to engage in sexual activity for hire, but must also have 'initiated an offer that was complete in those terms.'" *Short* at ¶ 32,

citing *State v. West*, 2d Dist. Montgomery No. 22966, 2009-Ohio-6270, ¶ 21. In doing so, we stated, "[t]he conduct that R.C. 2907.24 prohibits is the offer. Whether it is done in the form of an initial offer, a counter offer, or in response to an open inquiry, is immaterial." *Id.*, citing *West* at ¶ 22. Once a defendant has initiated an offer of sex for hire, the mere fact that an officer is the first one to mention a dollar amount is not sufficient to negate a defendant's actions in asking for sex in exchange for money. *Id.* at ¶ 33, citing *State v. Bennett*, 1st Dist. Hamilton No. C-140507, 2015-Ohio-3246, ¶ 11.

{¶ 21} Here, Lightle's testimony established that Wendling pulled up to the curb where she was standing. He then rolled down his window, made eye contact, motioned her to get in his car, and asked her to accompany him to his home. Lightle declined, stating she could not travel that far. She then asked him what he had in mind, to which he replied, "head." Lightle then asked "twenty bucks?" Wendling said, "I'll give you $20."

{¶ 22} While Lightle was the one to suggest a dollar amount for the encounter, we cannot reasonably characterize Wendling's conduct as merely acquiescing to Lightle's advances. Wendling made the initial contact and identified a specific sexual act he wanted Lightle to perform. Combined with Wendling's behavior in approaching Lightle and his repeated attempts to get her to go to his home with him, the jury could have reasonably found that he was aware monetary payment was expected for the requested sexual act. We reject Wendling's contention that *Swann* and *Howard* compel us to reverse his convictions merely because Lightle suggested a particular monetary amount for the requested sexual activity. Thus, we conclude there was sufficient evidence to find Wendling committed the acts of soliciting and loitering to engage in soliciting.

{¶ 23} With respect to the manifest weight argument, Wendling's version of the events obviously differed from Lightle's. However, the jury chose to reject Wendling's testimony and to instead credit to the testimony from Lightle. The jury as the trier of fact is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Irvin*, 2020-Ohio-4847, 160 N.E.3d 388, ¶ 42 (2d Dist.), *motion to certify allowed*, 161 Ohio St.3d 1416, 2021-Ohio-120, 161 N.E.3d 709, ¶ 42, *and appeal allowed*, 161 Ohio St.3d 1416, 2021-Ohio-120, 161 N.E.3d 711, ¶ 42. Further, because the jury as factfinder "had the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 24} Further, even if credence were given to Wendling's claim that he also spoke to Lightle at the 15-minute mark on the recording, the statements he testified to making at that point did nothing to negate his actions and direct request for oral sex during the subsequent encounter.[3] As noted above, Wendling initially testified that he approached Lightle because he thought she might be the woman he knew from AA. However, on cross-examination, Wendling admitted that he would have known from the claimed first encounter that Lightle was not that woman, and yet he once again approached her and engaged her in further conversation.[4] More importantly, Lightle's statements during the

---

[3] Importantly, we note Wendling did not claim the conversation recorded at the 17-minute mark was inaccurate or that it had been altered. He merely claimed there was additional conversation preceding that encounter.

[4] The first claimed encounter between Wendling and Lightle lasted approximately 30

17-minute mark portion of the recording, which can be clearly heard, supported the jury's conclusions.

{¶ 25} Based upon our review of the record, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶ 26} Wendling's second assignment of error is overruled.

## III.    Jury Instructions

{¶ 27} The first assignment of error asserted by Wendling is as follows:

THE TRIAL COURT ERRED IN NOT INCLUDING A JURY INSTRUCTION

FOR THE DEFENSE OF ENTRAPMENT.

{¶ 28} Wendling challenges the trial court's refusal to give the jury an instruction on entrapment.

{¶ 29} "The rule regarding jury instructions is that requested instructions in a criminal case must be given when they are correct, pertinent, and timely presented." (Citation omitted.)   *State v. J*oy, 74 Ohio St.3d 178, 181, 657 N.E.2d 503 (1995). Conversely, a trial court need not instruct the jury on an issue for which there is no supporting evidence.   *State v. Rahe*, 10th Dist. Franklin No. 06AP-997, 2007-Ohio-5864, ¶ 17.   Thus, a trial court does not err in failing to instruct the jury on an affirmative defense

---

seconds.   After that, the only sounds heard were the ambient traffic noises and a few seconds of music as a car passed by.   Thus, if, as Wendling claims, there were two encounters, it appears that he left the scene for a few moments and then returned for the second encounter.

where the evidence is insufficient to support the instruction.   *State v. Palmer*, 80 Ohio St.3d 543, 564, 687 N.E.2d 685 (1997); *State v. Strunk*, 12th Dist. Warren No. CA2006-04-046, 2007-Ohio-683, ¶ 16.

{¶ 30} "In reviewing the record to ascertain the presence of sufficient evidence to support the giving of a proposed jury instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction."   *State v. Davis*, 2016-Ohio-1166, 61 N.E.3d 650, ¶ 35 (12th Dist.); *State v. Gibson*, 2019-Ohio-1022, 133 N.E.3d 1006, ¶ 19 (2d Dist.).   A trial court's decision whether to give a requested jury instruction is reviewed on appeal using an abuse of discretion standard.   *State v. Elijah*, 2d Dist. Montgomery No. 18034, 2000 WL 968781, *4 (July 14, 2000).   An abuse of discretion occurs when the trial court's decision displays an attitude that is arbitrary, unreasonable or unconscionable.   *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 31} Here, Wendling requested an instruction on the defense of entrapment, which is an affirmative defense that a defendant has the burden of proving by a preponderance of the evidence.   *State v. Graham*, 2019-Ohio-2033, 136 N.E.3d 959, ¶ 9 (2d Dist.), citing *State v. Doran*, 5 Ohio St.3d 187, 193, 449 N.E.2d 1295 (1983); R.C. 2901.05(A).   This defense is established when the evidence demonstrates "the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute."   *Doran* at 192.   However, there is no entrapment "when government officials merely afford opportunities or facilities for the commission of the offense and it is shown that the accused was predisposed to commit the offense."

(Internal quotations and citation omitted.) *Id.*

{¶ 32} Based upon the same arguments set forth in the second assignment of error above, Wendling asserts that the evidence demonstrated that Lightle's actions induced the commission of the crimes.

{¶ 33} We disagree with Wendling's assessment of the evidence presented in this case. As set forth above, there was competent, credible evidence upon which the jury could have relied in finding that Wendling had committed the charged offenses. More importantly, the record clearly demonstrates that Wendling was the one to initiate the encounter and the subsequent offer. Based upon Wendling's own testimony, he knew after the first encounter that Lightle was not his acquaintance from AA. Yet he re-engaged Lightle and asked her to go to his home with him. When Lightle indicated that she could not travel that far, she asked Wendling what he had in mind. Wendling immediately indicated he wanted to engage in oral sex.

{¶ 34} After reviewing the record, we conclude that Wendling failed to present evidence to support a finding that Lightle planted in his mind the possibility of the pair engaging in oral sex. Thus, we conclude the trial court did not abuse its discretion in failing to instruct the jury on the affirmative defense of entrapment. Accordingly, the first assignment of error is overruled.

## IV.    Conclusion

{¶ 35} Both of Wendling's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.


Copies sent to:

Stephanie L. Cook
Andrew D. Sexton
Adam James Stout
Hon. Carl Sims Henderson