[Cite as *State v. Callihan*, 2022-Ohio-2082.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## NOBLE COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

RANDALL W. CALLIHAN,

Defendant-Appellant.

---

### OPINION AND JUDGMENT ENTRY
### Case No. 21 NO 0485

---

Criminal Appeal from the
Noble County Court of Noble County, Ohio
Case Nos. 21 CRB 134; 21 CRB 135

**BEFORE:**
Carol Ann Robb, Gene Donofrio, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jordan Croucher*, Noble County Prosecutor, *Atty. Jamie A. Riley Pointer*, Assistant Prosecuting Attorney, 150 Courthouse, Caldwell, Ohio 43724, for Plaintiff-Appellee and

*Atty. Michael Groh*, Groh Law Office, 1938 E. Wheeling Avenue, Cambridge, Ohio 43725, for Defendant-Appellant.

Dated: June 17, 2022

---

**Robb, J.**

**{¶1}** Defendant-Appellant Randall W. Callihan appeals his convictions entered after a jury trial in the Noble County Court. He contends the state did not present sufficient evidence and the jury verdict was contrary to the manifest weight of the evidence. For the following reasons, these arguments are overruled, and the trial court's judgment is affirmed.

<u>STATEMENT OF THE CASE</u>

**{¶2}** On July 19, 2021, Appellant was charged with two counts of theft (first-degree misdemeanors). He was also charged with criminal mischief (third-degree misdemeanor) and criminal trespass (fourth-degree misdemeanor). These charges were tried to a jury while a dog tag violation was tried to the court.

**{¶3}** According to the testimony, Appellant began renting the property next to the Woodworth's house in 2020. After several months, the police began receiving various calls due to their arguments over the property line. (Tr. 62-63, 79). In March 2021, Appellant's landlord paid for a property survey. (Tr. 105, 111, 140). The Woodworths thereafter abided by the line established by the survey. (Tr. 109).

**{¶4}** Soon thereafter, the Woodworths placed PVC (polyvinyl chloride) pipes (with orange painted tips) near the front and back survey pins to emphasize where their property met the property Appellant rented. Mr. Woodworth said the back PVC pipe was placed four inches from the survey pin in the direction of their own property. (Tr. 107). Between the corner pipes, they placed additional PVC pipes, which were interspersed with newly-purchased and painted wooden stakes that were well within their side of the property line (as they were advised to do by the police). (Tr. 108, 119, 125). They posted no trespassing signs further into their yard (also upon the advice of a deputy). (Tr. 109, 119).

**{¶5}** Mrs. Woodworth said Appellant would aggressively yell at her when he saw her outside. (Tr. 158). She eventually noticed wooden stakes and PVC pipes were missing or broken. (Tr. 117, 131). Mr. Woodworth explained he was often away at work for weeks at a time and they installed motion-sensing security cameras. (Tr. 97-98). On

June 11, 2021, Mrs. Woodworth called the police after watching a video captured by their back camera. It showed Appellant walking into their yard, kicking at a stake which had broken off in the ground, stepping further into the yard, picking up a stake, and walking away with it. (Tr. 92, 99-101, 124); (St.Ex. 10).

{¶6} The responding deputy investigated, took photographs, and retrieved a copy of the video. He noticed spots where two missing stakes previously stood (with the bottom part of one remaining in the ground). (Tr. 51); (St.Ex. 1). Mrs. Woodworth noted the condition of the grass in a photograph corresponded to the video showing Appellant kicking at the broken stake stump. (Tr. 125). Another stake had been moved and was on the ground near one of her signs. (St.Ex. 5).

{¶7} The deputy and Mrs. Woodworth spotted the missing items in plain view on the property rented by Appellant. The two missing stakes were on top of Appellant's brush/burn pile. (Tr. 52, 56-58, 127, 132); (St.Ex. 6-7). A missing PVC pipe was partially concealed behind some wood leaning on Appellant's shed. (Tr. 55-56, 117, 123); (St.Ex. 3-4).

{¶8} A lieutenant testified it was not difficult to ascertain the property line from the front survey pin because the back survey pin aligned with a tree in the line of sight. (Tr. 83, 92). Hoping to settle the dispute outside of the criminal justice system, the lieutenant suggested Mrs. Woodworth run string to mark the line. (Tr. 84). Mrs. Woodworth went to a hardware store and purchased pink string.

{¶9} On June 14, 2021, she ran this string to the inside of the survey pins with the lieutenant present; Appellant's landlord arrived during the operation. (Tr. 84-85, 119, 122). The lieutenant said the string confirmed the Woodworths' wooden stakes were 1 to 1.5 feet on their own side of the property line, bolstering their testimony that the stakes were placed well within their own yard. (Tr. 80-81).

{¶10} Appellant told the lieutenant the surveyor was a "fucking crook" and the survey was not accurate. (Tr. 79). He said the back corner of the property he rented was 10 feet from where the surveyor placed the pin, but the lieutenant opined this would result in an arched line. (Tr.83- 84). The lieutenant spoke to the registered surveyor about the property. (Tr. 79).

{¶11} Mrs. Woodworth said they started staying elsewhere (and later moved) because they did not feel safe at the house. (Tr. 120). On a subsequent trip to her house,

she noticed the pink string was broken.  She tied the broken ends together and then purchased heavy green "paracord" to run along the line.  (Tr. 121, 126).

{¶12}  On July 16, 2021, the original deputy, another deputy, and the lieutenant responded to another call by Mrs. Woodworth, who reported the new cord had been cut.  The deputy noticed a clean cut through the cord.  (Tr. 60).  He took photographs of the string and cord.  (St.Ex. 9, 11).  The lieutenant noticed more than one clean cut, which he believed was made with a sharp instrument. (Tr. 78).

{¶13}  Mrs. Woodworth testified the cord was also moved after being cut.  The cord was lifted over her clothesline pole (which was two feet inside her yard) and was then placed so that it ran through her lilac bush.  (Tr. 134).

{¶14}  When another deputy went to arrest Appellant, a dog approached without a tag.  When the deputy told Appellant he was under arrest, Appellant admitted he cut the line, stating he did it in order to mow the grass.  (Tr. 70, 73).

{¶15}  Appellant testified in his own defense and was apparently very "excitable" while testifying.  (Tr. 166).  He gave a confusing recitation about a tree at the back of the property line and the accuracy of the markers between the pins.  (Tr. 141, 144-145).  He said the landlord's husband mowed over the PVC pipe found by his shed.  (Tr. 142).  He opined he was on his rented property in the video and admitted using a hammer to try to dig up the broken wooden stake.  (Tr. 146).  He denied cutting the lines while opining, "the actual property line is a little bit on the other side of that clothes line post and it kind of splits that bush."  (Tr. 143-144).

{¶16}  The jury found Appellant guilty of the theft count involving the wooden stake, but not guilty of the theft count involving the PVC pipe.  The jury also convicted him of criminal mischief and criminal trespass.  The charge of failure to register a dog, which was tried to the bench, resulted in a not guilty judgment.  Appellant was sentenced the same day (180 days with 150 suspended and three years of probation for theft and 30 days with 15 suspended for criminal mischief).  He filed a timely notice of appeal from the October 26, 2021 entry.

ASSIGNMENT OF ERROR ONE: SUFFICIENCY OF THE EVIDENCE

{¶17}  Appellant's first assignment of error contends:

"THERE WAS INSUFFICIENT EVIDENCE TO FIND APPELLANT GUILTY OF THEFT, CRIMINAL TRESPASS, AND CRIMINAL MISCHIEF."

Case No. 21 NO 0485

**{¶18}** Whether the evidence is legally sufficient to sustain a conviction is a question of law dealing with adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). An evaluation of witness credibility is not involved in a sufficiency review, as the question is whether the evidence is sufficient if it is believed. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79, 82; *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). In other words, sufficiency involves the state's burden of production rather than its burden of persuasion. *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring). In reviewing the sufficiency of the evidence, the court views the evidence in the light most favorable to the prosecution to ascertain whether any rational juror could have found the elements of the offense proven beyond a reasonable doubt. *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). *See also State v. Filiaggi*, 86 Ohio St.3d 230, 247, 714 N.E.2d 867 (1999) (reasonable inferences are viewed in favor of the state); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (all of the evidence is to be considered in the light most favorable to the prosecution, including reasonable inferences).

**{¶19}** The theft offense at issue has the following elements: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * Without the consent of the owner or person authorized to give consent * * *." R.C. 2913.02(A)(1). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

**{¶20}** The pertinent criminal mischief offense states: "No person shall: (1) Without privilege to do so, knowingly move, deface, damage, destroy, or otherwise improperly tamper with * * * The property of another * * *." R.C. 2909.07(A)(1). Property includes real and personal property. R.C. 2901.01(A)(10)(a). Privilege is defined as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12).

**{¶21}** The criminal trespass offense at issue reads: "No person, without privilege to do so, shall * * * Knowingly enter or remain on the land or premises of another * * *." R.C. 2911.21(A)(1). "A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

**{¶22}** Appellant argues the evidence of all three offenses was insufficient because the boundary line was disputed. However, a survey was conducted at the request of Appellant's landlord, and survey pins were placed by a registered surveyor. The lieutenant opined the line was not difficult to follow from the front pin to the back, especially after they ran the string from the markers placed inside the pins. The lieutenant confirmed the Woodworths' testimony that their wooden stakes and the line they marked was well within their yard. The Woodworths also posted "No Trespassing" signs facing Appellant's direction. (Considering the historical relationship between the parties, Appellant would have been aware the signs were specifically placed for his viewing.) Appellant was seen on video kicking at the base of a wooden stake and taking a stake away. Two of the stakes were found on Appellant's burn pile.

**{¶23}** This was sufficient evidence for the theft offense of which the jury convicted Appellant. For a sufficiency review, the question is merely whether "any" rational trier of fact could have found the contested element satisfied beyond a reasonable doubt. *State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998), quoting *Jackson*, 443 U.S. at 319. Because a defendant's intent dwells in his mind, the surrounding facts, circumstances, and resulting inferences are the traditional indicators of a defendant's intent. *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001). A rational juror could find beyond a reasonable doubt Appellant knowingly obtained or exerted control over the wooden stakes without the consent of the Woodworths with purpose to deprive them of this property in violation of R.C. 2913.02(A)(1).

**{¶24}** As reviewed above, the Woodworths also accused Appellant of cutting their green cord running between the PVC pipes (and simultaneously causing the pink string to fail as well). The lieutenant agreed the heavy-duty cord had been cut with a sharp instrument. Appellant admitted he cut the cord, telling the arresting deputy, "I cut it to mow." (Tr. 73). However, the cord did not belong to him, and a rational fact-finder could find it was angled so that it was on the Woodworths' side of the line. Mr. Woodworth pointed out their back corner PVC pipe was actually four inches from the survey pin

Case No. 21 NO 0485

toward their side of the property line, and again, the testimony established their side markers were a foot or more within the property line. (Tr. 107). In addition, Mrs. Woodworth pointed out the cord was moved further into her property. It was lifted over her clothesline pole and placed so that it ran through her lilac bush.

{¶25} We further refer to the trial testimony set forth in our detailed Statement of the Case above and point out circumstantial evidence inherently possesses the same probative value as direct evidence. *Treesh*, 90 Ohio St.3d at 485. Some rational person could find beyond a reasonable doubt Appellant knowingly moved, damaged, or otherwise improperly tampered with the property of the Woodworths without privilege to do so, constituting criminal mischief in violation R.C. 2909.07(A)(1). A rational person could also conclude beyond a reasonable doubt that Appellant knowingly entered the land of another without privilege to do so, constituting criminal trespass in violation of R.C. 2911.21(A)(1).

{¶26} Viewing all of the evidence and rational inferences in the light most favorable to the prosecution, a rational trier of fact could find the elements of the three offenses were established beyond a reasonable doubt. Accordingly, this assignment of error is overruled.

<u>ASSIGNMENT OF ERROR TWO: WEIGHT OF THE EVIDENCE</u>

{¶27} Appellant's second assignment of error alleges:

"APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶28} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Thompkins*, 78 Ohio St.3d at 387. Although the effect of the evidence in inducing belief is evaluated, weight of the evidence is not a question of mathematics. *Id.* A weight of the evidence review considers whether the state met its burden of persuasion. *Id.* at 390 (Cook, J., concurring) (as opposed to the burden of production involved in a sufficiency review). When a defendant claims the conviction is contrary to the manifest weight of the evidence, the appellate court is to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial

<u>Case No. 21 NO 0485</u>

ordered. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, citing *Thompkins*, 78 Ohio St.3d at 387.

{¶29} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact occupies the best position from which to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶30} Where a case was tried by a jury, only a unanimous appellate court can reverse on manifest weight of the evidence grounds. Ohio Constitution, Article IV, Section 3(B)(3). The power of the court of appeals to sit as the "thirteenth juror" is limited in order to preserve the jury's primary function of weighing the evidence. *Thompkins*, 78 Ohio St.3d at 389.

{¶31} The jury was within its province to accept the testimony of the officers and the Woodworths as credible and to consider Appellant's testimony lacking in credibility. The testimony of the state's witnesses was supported by corroborating evidence and contained supporting rationale. To the contrary, Appellant's testimony was unclear and unconvincing. The jury saw Appellant's demeanor, watched his gestures, and heard his voice inflection. Although a deputy testified he heard Appellant admit to cutting the cord, Appellant's trial testimony essentially denied cutting the cord. Rather than saying he cut the cord to mow, he used the mowing excuse for the PVC pipe removal and said his landlord's husband mowed over it. We note Appellant was acquitted of the theft corresponding to the PVC pipe, indicating the jury did not blindly follow the state's theory of the case.

{¶32} Repeatedly, the police tried to defuse the situation without resorting to charges, but the situation escalated. The evidence supported a finding that Appellant was "aware" the property line was "probably" where the pins were marked by the registered survey or hired by his landlord. *See* R.C. 2901.22(B). The jury could weigh the evidence and conclude that the stakes, string, and cord were within the Woodworth's property when he took the stakes and later when he cut the lines and that he was even further within their property at the point where he moved the cord over a clothesline and

Case No. 21 NO 0485

into a bush. Accordingly, it was within the jury's province to believe testimony showing: Appellant knowingly obtained the stakes without the Woodworth's consent with purpose to deprive them of the stakes for the theft count; he knowingly damaged, moved, or tampered with their property, including their cord, without privilege to do so for the criminal mischief count; and he knowingly entered their land without privilege to do so for the criminal trespass count.

**{¶33}** The evidence presented by the state (further reviewed in the prior assignment of error and in our Statement of the Case) was not "unbelievable" for purposes of a weight of the evidence review. "When more than one competing interpretation of the evidence is available and the one chosen by the jury is not unbelievable, we do not choose which theory we believe is more credible and impose our view over that of the jury." *State v. Baker*, 7th Dist. Mahoning No. 19 MA 0080, 2020-Ohio-7023, ¶ 148, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). A thorough review of the record does not indicate this is the exceptional case in which the evidence weighs heavily against the conviction and requires the exercise of our limited "thirteenth juror" discretion to grant a new trial. *See Lang*, 129 Ohio St.3d 512 at ¶ 220. Accordingly, the jury's decision to convict Appellant of the three offenses was not contrary to the manifest weight of the evidence, and this assignment of error is overruled.

**{¶34}** For the foregoing reasons, Appellant's assignments of error are without merit, and the trial court's judgment is affirmed.


Donofrio, P J., concurs.

D'Apolito, J., concurs.

[Cite as *State v. Callihan*, 2022-Ohio-2082.]

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Noble County Court of Noble County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**