[Cite as *State v. Zhang*, 2023-Ohio-3173.]

IN THE COURT OF APPEALS OF OHIO
SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

State of Ohio

    Appellee

v.

Stephanie Zhang

    Appellant

Court of Appeals No. 22MA00083

Trial Court No. 2022 CR B 00057

**<u>DECISION AND JUDGMENT</u>**

September 7, 2023

* * * * *

Edward A. Czopur, Assistant Prosecuting Attorney, for appellee.

Kevin Daley, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Following a bench trial, defendant-appellant, Stephanie Zhang, appeals the July 1, 2022 judgment of the Mahoning County Court No. 5, Canfield, Ohio, convicting her of soliciting and sentencing her to five days in jail and a term of community control. For the following reasons, we affirm the trial court judgment.

## I.     Background

{¶ 2} According to the evidence presented by the state at trial, in March of 2022, law enforcement conducted an investigation of the Lucky Foot Massage in Beaver Township, Mahoning County, Ohio.  There were concerns that illegal sexual conduct, sexual contact for money, or prostitution may be occurring on the premises.  Detective Daniel Haueter, working as an undercover agent, went to the establishment on March 4, 2022, and March 10, 2022, with a body wire and controlled money to be used for the purchase of a massage.  The events of his March 4, 2022 visit are the subject of Mahoning County Court No. 5 case No. 2022 CRB 56.  The events of his March 10, 2022 visit are at issue here.

{¶ 3} On March 10, 2022, Detective Haueter entered the Lucky Foot Massage; no one was manning the lobby.  A woman, later identified as Stephanie Zhang, came out, greeted him, and took him to a room on the left-hand side of the hallway.

{¶ 4} When they got into the room, Zhang asked Detective Haueter how long of a massage he wanted; he said a half-hour.  She told him it would be $45, and he handed her three $20 bills.  Zhang told Detective Haueter to disrobe and lie face down on the table.  She left the room, and the detective removed all his clothes to a full state of nudity.  He draped a towel over his buttocks, upper back, and legs.

{¶ 5} When Zhang returned, she began a gentle massage of Detective Haueter's body.  At some point, without being requested to do so, she removed the towel from his

2.

body, rendering him completely naked. While he was still on his stomach, a woman, later identified as Haidan Pan, entered the room and placed Detective Haueter's $15 change on a cubicle in the room.

{¶ 6} At approximately the 15-minute mark, Zhang asked Detective Haueter to flip onto his back. She reached for a bottle of massage oil with one hand, then reached down with the other hand, grabbed Detective Haueter's penis, and was about to pour the massage oil on his penis. Again, she did this without asking.

{¶ 7} Detective Haueter stopped Zhang and asked her how much that was going to cost. She responded that it was however much the customer wanted to pay. He got up from the table and said that he would have to get extra money from his truck. Zhang told him that he did not have to get the money immediately, but Detective Haueter insisted upon doing so. He told her he would give her his $15 change from the $60 he gave her for the $45 massage, along with an additional $20. He then used a code word, signaling the other officers to come in and execute a search warrant. Zhang was charged with soliciting.

{¶ 8} Detective Haueter testified that he has been involved in "countless" similar undercover investigations. He explained that due to language barriers, "a lot of times the offers and the acts may not be verbal at all"—"[t]hey may be hand motions." He said that in the past, he has been solicited by "something like the masturbation hand motion" or by a person "pointing to body parts." Although Detective Haueter conceded that

3.

Zhang did not proposition him with a price, he insisted that if he had not stopped Zhang and given the code word terminating the massage, "[s]he would have performed a manual sex act on [his] penis using the massage oil," in exchange for payment.

{¶ 9} Zhang moved for acquittal under Crim.R. 29. She argued that there was nothing of value exchanged for a sex act; Detective Haueter paid for a massage and provided Zhang nothing in addition to what he paid for the massage. Zhang maintained that any propositioning for a sex act came from Detective Haueter. She also claimed that there was no solicitation for the act—she merely touched the detective's penis without discussing the exchange of any additional money. Zhang emphasized that she asked no question of Detective Haueter and it was he who initiated the conversation. She insisted that "there was no proposition" and no "additional consideration."

{¶ 10} The state responded that there had already been an exchange of cash as part of the original purchase. It contended that Zhang's response to Detective Haueter that people do give extra indicated that she believed she would receive extra and for this reason, "she continued to manipulate his penis." The state maintained that it does not matter who started the conversation—"[t]he conversation was still had" and "the conversation was a sex act for money."

{¶ 11} The trial court denied Zhang's motion. It reasoned that Zhang received something of value—the $45 originally received for the 30-minute massage.

4.

{¶ 12} Zhang testified in her own defense. She testified that customers have asked her for illegal sexual acts. She recounted that on two occasions, she called the police. She denied that she touched Detective Haueter's penis. She conceded that she had him completely undress for the massage, but she maintained that she removed his towel because she needed it to dim the lamp in the room because it was too bright. Zhang denied that she discussed with Detective Haueter the exchange of additional money above the cost of the massage. She said that she had not even finished the massage, and if he had given her additional money beyond the price of the massage, she would have considered it a tip.

{¶ 13} Zhang was convicted of solicitation, a violation of R.C. 2907.24(A), a third-degree misdemeanor. She was sentenced to five days in jail, placed on community control for 12 months, and ordered to perform two hours of community service.

{¶ 14} Zhang assigns the following error for our review:

> The Trial Court erred in entering a guilty verdict as there was insufficient evidence to support such a finding.

## II. Law and Analysis

{¶ 15} In her sole assignment of error, Zhang argues that her conviction is not supported by sufficient evidence. She claims that she "never brought up money, never asked Detective Haueter for money, did not offer to perform a sex act for money, and even after Detective Haueter asked her how much she would charge for the sex act she

5.

gave no price." She insists that she agreed to take money only after being prompted by the detective. Zhang maintains that the crime of soliciting is in the asking, and she never asked for money in exchange for performing a sex act.

{¶ 16} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker,* 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978). "Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13. Naturally, this requires "a review of the elements of the charged offense and a review of the state's evidence." *Id.*

{¶ 17} R.C. 2907.24(A) prohibits a person from "knowingly solicit[ing] another to engage in sexual activity for hire in exchange for the person receiving anything of value from the other person." Under R.C. 2907.24(D), "sexual activity for hire" means "an implicit or explicit agreement to provide sexual activity in exchange for anything of value paid to the person engaging in such sexual activity * * *."

6.

{¶ 18} Zhang cites *State v. Swann,* 142 Ohio App.3d 88, 753 N.E.2d 984 (1st Dist.2001), in support of her position that she did not solicit Detective Haueter. In *State v. Swann,* the defendant was walking down the street when an officer pulled along the curb and engaged her in conversation. He invited her into his car. At first, they talked about topics of a non-sexual nature, but the officer eventually asked her if she wanted to "trade off crack * * * instead of money" for oral sex. *Id.* at 89. The defendant told the officer she wanted money. The officer asked how much it would cost, and they went back and forth on the price—he suggested $10, but she said she wanted $15. At that point, the officer signaled for his partner who arrested the defendant. She was charged with soliciting.

{¶ 19} The First District Court of Appeals began by recognizing that to "solicit" means to "entice, urge, lure or ask." *Id.* It considered whether the defendant "solicited" the officer to engage in sexual activity for hire. The state's position was that "any time a person *agrees* to have sex for money, the statute is violated." (Emphasis in original.) *Id.* But the court explained that the statute prohibited "solicit[ing] another" to engage in sexual activity for hire—not "agree[ing] with another" to engage in sexual activity for hire. *Id.* Because the statute prohibits "soliciting"—not agreeing"—the court refused to interpret the statute in the manner urged by the state. And because the defendant "did not 'entice, urge, lure or ask' the officer for anything"—"[s]he simply agreed to his

7.

suggestion"—the court characterized the defendant as "the solicitee, not the solicitor." *Id.* at 89-90. Accordingly, it reversed her conviction for lack of sufficient evidence.

{¶ 20} The state maintains that there was sufficient evidence of soliciting here. It insists that the present case is different from *Swann* because Zhang—not the detective— first suggested sexual activity in exchange for money. The state maintains that even though Zhang did not state an exact price, she did indicate that the sexual act would cost more than just the massage itself, and she agreed to an extra fee of $35 (the $15 change and $20 that the detective would retrieve from his vehicle). It highlights the following facts: (1) the detective was not asked for his name, identification, or to complete any paperwork before the massage; (2) the detective was told to completely disrobe but for a towel that would cover his genital area; (3) the detective testified that in his experience, massage parlors that offer sexual favors often use code or non-verbal cues to initiate a sex act for pay; (4) Zhang removed the towel that covered the detective's genital area before grabbing his penis; and (5) Zhang discussed additional payment from the detective for performance of the sex act.

{¶ 21} As an initial matter, not all districts agree with the First District's position that solicitation requires the defendant to have initiated the offer. For instance, the Second District has "rejected the contention that a person accused of soliciting must not only offer to engage in sexual activity for hire, but must also have 'initiated an offer that was complete in those terms.'" *State v. Short,* 2017-Ohio-7200, 144 N.E.3d 1037, ¶ 32

8.

(2d Dist.), quoting *State v. West*, 2d Dist. Montgomery No. 22966, 2009-Ohio-6270, ¶ 21. The court explained that "[t]he conduct that R.C. 2907.24 prohibits is the offer. Whether it is done in the form of an initial offer, a counter offer, or in response to an open inquiry, is immaterial." *Short* at ¶ 32; *West* at ¶ 22; *State v. Wendling,* 2d Dist. Montgomery No. 29074, 2022-Ohio-496, ¶ 20.

{¶ 22} But we need not decide which approach is preferable because under the facts of this case, a reasonable fact-finder could conclude that Zhang "entice[d], urge[d], lure[d] or ask[ed]" the officer to engage in sexual activity for hire. The state's evidence, if believed, demonstrates that Zhang initiated sexual activity with Detective Haueter when she grabbed his penis without being asked to do so. It was clear that Zhang expected additional compensation as evidenced by her response to Detective Haueter that the cost for this sexual activity was as much as the customer wanted to pay—she did not say that it cost nothing. Finally, Zhang did, in fact, accept money for sexual activity. Detective Haueter paid her $45 for a 30-minute massage, but 15 minutes into the massage, without being requested by the detective, she began to perform sexual activity in exchange for that payment. A fact-finder could reasonably conclude that Zhang was either confident that Detective Haueter understood and was expecting to pay an additional amount for sexual activity, or she deemed that the $45 was sufficient to compensate for the 15-minute massage she already performed *plus* the sexual activity that she was prepared to perform.

9.

**{¶ 23}** Under these facts, we conclude that a reasonable trier of fact could have found the essential elements of solicitation proven beyond a reasonable doubt. We find Zhang's sole assignment of error not well-taken.

### III. Conclusion

**{¶ 24}** The detective testified that he paid for a 30-minute massage, 15 minutes into the massage, Zhang initiated sexual activity, and Zhang's response to the detective's inquiry about the cost for the sexual activity demonstrated that she expected additional payment. The state presented sufficient evidence of solicitation and we find Zhang's assignment of error not well-taken.

**{¶ 25}** We affirm the July 1, 2022 judgment of the Mahoning County Court #5, Canfield, Ohio. Zhang is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.                          _____
                                                               JUDGE
Gene A. Zmuda, J.

Myron C. Duhart, P.J.                                        JUDGE
CONCUR.

                                               _____
                                                               JUDGE

Judges Christine E. Mayle, Gene A. Zmuda, and Myron C. Duhart, Sixth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.