[Cite as *State v. Plaster*, 2024-Ohio-5938.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
NOBLE COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

RONALD PLASTER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 NO 0515**

---

Criminal Appeal from the
County Court of Noble County, Ohio
Case No. 24 CRB 218

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jordan Croucher*, Noble County Prosecutor, *Atty. Jamie A. Riley Pointer,* Noble County Assistant Prosecutor, for Plaintiff-Appellee and

*Atty. Charles A.J. Strader*, Attorney Charles Strader, LLC, for Defendant-Appellant.

Dated: December 19, 2024

**Robb, P.J.**

{¶1} Defendant-Appellant Ronald Plaster appeals the decision of the Noble County Court finding Appellant guilty of soliciting after a bench trial. Appellant challenges the sufficiency and the weight of the evidence. For the following reasons, Appellant's conviction is affirmed.

<u>STATEMENT OF THE CASE</u>

{¶2} On September 30, 2023, a detective with the Noble County Sheriff's Office who worked on a human trafficking task force was conducting a sting operation at a hotel. The task force had previously compiled a list of names and numbers after communicating with individuals who posted online offers to provide services in the county. (Tr. 24). On a website called skipthegames.com, a provider named "TS Roxie personal companionship" posted a paid advertisement listing a phone number with a 740 area code. (St.Ex. 1.1); (Tr. 10-11). The "Outcall" location availability was listed as "[C]ambridge/surround area" with accepted payment methods of "Cash, Cashapp." (St.Ex. 1.7). The detective testified outcall meant the service provider would travel to the client. (Tr. 12).

{¶3} Photographs of a person identified at trial as Appellant were posted with the ad. (St. Ex. 1.2); (Tr. 21-22). Along with other physical descriptors and the age of 36, the ad disclosed both breast size and penis size (leading a reader to infer the "TS" before the service provider's name may stand for transsexual, which is relevant to Appellant's identity at the time of arrest as corresponding to the identity of the advertised service provider). (St.Ex. 1.7). The ad listed various available sexual activities including "blowjob with or without condom" and "Dildo and Deep anal Penetration" followed by "Any series of sex position[s] is available . . . I'm available by appointment weekdays, weekends first come first served. If you interest[ed] I am top an[d] bottom and love to dom[i]nate as well." (St.Ex. 1.8).

{¶4} In addition to entertainment and lunch or dinner dates, a second list in the ad entitled, "Activities this service provider may enjoy" included sexual activities such as: "Deep throat"; "Intercourse - anal - bottom (receive)"; "Intercourse - anal - top (give)"; "Oral

(give)"; "Oral (receive)"; and "Pornstar experience (PSE)."  (St.Ex. 1-8).  An attempted disclaimer read:

> I am a professional service provider.  Any fees or compensation paid to me are for my time and companionship only.  Any actions that take place within our contracted timeframe are a matter of mutual choice between consenting adults. Any scenarios, fantasy or otherwise, contained in this ad are purely that; they do not constitute any form of contractual obligation.  I do not engage in unlawful acts.  I reserve the right not to enter into any arrangement with those whom I reasonably believe to be under the influence of drugs or alcohol, or for any other reason at my sole discretion.

(St.Ex. 1-9).

{¶5}    During the sting operation, the task force (hereinafter detective) texted TS Roxie at 8:20 p.m. at the number provided in the ad:

Detective:    Can you meet tonight?

TS Roxie:    Maybe

Detective:    What do you charge for full service?

TS Roxie:    Where you at.  What you looking for?

Detective:    1 or 2 hr raw

TS Roxie:    Ok

Detective:    How much does that charge?

TS Roxie:    So you just want a basic good time no kink and such?

Detective:    Yeah for sure

TS Roxie:    It would be 220 1 hr or 350 for 2 hours.  Depends on where you are at

Detective:    I'm staying in Caldwell

TS Roxie:    Where?

(St.Ex.2).  According to the detective's testimony, "full service" meant full sex and "raw" meant without a condom.  (Tr. 17, 35).

{¶6}    After the hotel name was disclosed by the detective, TS Roxie clarified the quoted range by stating, "220 hr 350 for 2 hr."  When TS Roxie mentioned someone else was at a nearby hotel requesting service as well, the following communications continued:

Case No. 24 NO 0515

Detective:     I gotcha can I be first in line? [heart emoji]

TS Roxie:     He wants the hour  What you want?

Detective:     I'll pay more to be first in line

TS Roxie:     So you want the 2 hour?

Detective:     If that means me first I could use a good time

TS Roxie:     Ok cool

Detective:     How soon can u be here?

TS Roxie:     Like within 2 hours.  It's a 40 min drive.  I need a[n] hour to get ready

Detective:     Okay shoot for 10:45?

TS Roxie:     Around that time yes . . . what's the room number?

Detective:     I'm in [room number and floor]

TS Roxie:     Ok . . . jumping in the shower

(St.Ex. 2). The detective texted, "Can't wait honey" and later, "I can't wait!!!" TS Roxie texted status reports when alighting from the shower and when traveling to the hotel and called the detective's number.

{¶7} Appellant was arrested after arriving at the hotel and entering the provided room number. (Tr. 39). In the detective's opinion, Appellant was dressed provocatively in a short tank dress with boots. (Tr. 20, 40). A brief video of the arrest was played at trial. (St.Ex. 3).

{¶8} Appellant was charged with two counts: first-degree misdemeanor engaging in prostitution in violation of R.C. 2907.231(B) and third-degree misdemeanor soliciting in violation of R.C. 2907.24(A). The case was tried to the court. After the above facts were presented during the detective's testimony in the state's case-in-chief, Appellant's motion for acquittal was denied.

{¶9} The defense then presented Appellant's testimony. Appellant testified to preferring the name Rachel (instead of the legal name Ronald). (Tr. 54). Appellant acknowledged being the person who posted the TS Roxie advertisement at issue and said "quite a few" people reached out because of it. Appellant admitted to setting the price at $220 an hour or $350 for two hours but said this was for "companionship, no sexual activity." (Tr. 61).

{¶10} When it was pointed out the amount corresponded to the "one or two hours raw" request, Appellant opined "It wasn't an agreement as much as an understanding that that's the way they wanted to proceed just for my time, yes. I mean it's not like a definite yes or no. It's like, okay, I understand . . . I kept asking the question what are you looking for." (Tr. 61-62). Appellant testified sex was not the intent upon arriving at the hotel, suggesting the texting client may have wanted a massage or "conversation while sitting around in lingerie." (Tr. 65-66).

{¶11} Appellant mentioned previously working as an escort in four other states and said it was a "side thing" with "romantic" aspects. (Tr. 54-55). Appellant spoke of "my regulars" and of a "client" who "purchases some time . . . to accompany here, accompany there." (Tr. 56-59). Appellant suggested any money received was not for any potential sex that may or may not occur after an appointment for paid "professional companionship." (Tr. 56). Appellant disclosed, "It's not only about the money as much as it's about the enjoyment I get out of it." (Tr. 62). Appellant explained: "I'm strictly an entertainment provider and sometimes that entertainment goes beyond the call, stuff like you pay for an hour but you end up staying for three hours . . . I do own a clock. If you want to have sexual activity and stuff like that my personal time is my personal time." (Tr. 59). It was suggested this theory would keep an escort from getting "in trouble" by being accused of "payment for sexual services." (Tr. 60).

{¶12} After the defense rested, the court requested closing briefs. Thereafter, the court found Appellant guilty of only the soliciting charge, a third-degree misdemeanor in violation of R.C. 2907.24(A), which states: "No person shall knowingly solicit another to engage in sexual activity for hire in exchange for the person receiving anything of value from the other person." Appellant was found not guilty of the first-degree misdemeanor offense of engaging in prostitution.[1]

{¶13} For the soliciting offense, Appellant was later sentenced to 60 days in jail with 57 days suspended, two years of reporting probation (following all treatment

---

[1] The court reasoned the engaging in prostitution offense was historically called procuring prostitution and contemplated the offender being someone other than the prostitute who would receive value. (3/8/24 J.E.); R.C. 2907.231(B) ("No person shall recklessly induce, entice, or procure another to engage in sexual activity for hire in exchange for the person giving anything of value to the other person.").

recommendations), and a $100 fine. Appellant filed a timely notice of appeal from the March 18, 2024 sentencing entry.

ASSIGNMENTS OF ERROR ONE & TWO

**{¶14}** Appellant's first two assignments of error are related, contending:

"The Court committed reversible error when it denied Plaster's Motion for Acquittal, pursuant to Criminal Rule 29(A) at the conclusion of the case by the State of Ohio."

**{¶15}** "The Court committed reversible error, as the conviction of Plaster was adverse to the sufficiency of the evidence presented at trial."

**{¶16}** Pursuant to Crim.R. 29(A), "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." If the defendant makes a motion for acquittal at the close of the state's case, the court may not reserve ruling on it. Crim.R. 29(A).

**{¶17}** Whether the evidence is sufficient to sustain a conviction is a question of law dealing with adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). An evaluation of witness credibility is not involved in a sufficiency review, as the question is whether the evidence is sufficient if it is believed. *State v. Murphy*, 91 Ohio St.3d 516, 543 (2001). In other words, sufficiency involves the state's burden of production rather than its burden of persuasion. *Thompkins* at 390 (Cook, J., concurring).

**{¶18}** The standard for reviewing the sufficiency of the evidence to support a criminal conviction on appeal is the same as the standard used to review the denial of a motion for acquittal. *See State v. Williams*, 74 Ohio St.3d 569, 576 (1996) (and acquittal on other charges makes denial of motion moot as to that charge); *State v. Carter*, 72 Ohio St.3d 545, 553 (1995). In reviewing the legal sufficiency of the evidence, the court views the evidence, including reasonable inferences, in the light most favorable to the prosecution to ascertain whether any rational juror could have found the elements of the offense proven beyond a reasonable doubt. *State v. Goff*, 82 Ohio St.3d 123, 138 (1998). *See also State v. Filiaggi*, 86 Ohio St.3d 230, 247 (1999) (reasonable inferences are viewed in favor of the state); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (consider all evidence in the light most favorable to the prosecution, including reasonable inferences).

**{¶19}** As set forth above, the soliciting statute provides: "No person shall knowingly solicit another to engage in sexual activity for hire in exchange for the person receiving anything of value from the other person." R.C. 2907.24(A). In considering each element, it must be remembered that circumstantial evidence inherently possesses the same probative value as direct evidence. *State v. Treesh*, 90 Ohio St.3d 460, 485 (2001).

**{¶20}** First, we address the contention that the state failed to present sufficient evidence on Appellant's identity as the person sending the communications to the detective. (His admissions to setting the price in the texts and to posting the ad did not occur until the defense's case, after the acquittal motion was denied, and were not part of the state's evidence for a sufficiency review.) Appellant notes the state did not produce evidence showing to whom the phone number was registered.

**{¶21}** However, the state presented legally adequate facts to prove Appellant's identity corresponded to the various items collectively used to establish the elements of the offense: Appellant's photograph was used in the online advertisement discussing various sexual activities and cash payment; the phone number posted in that ad responded to the detective's text messages with questions and set a price, length of appointment, appointment time, and location; the person at the phone number then reported progress toward the appointment (jumping in the shower, alighting from the shower, estimating travel time, and driving to the hotel); and Appellant was arrested upon entering the hotel room disclosed by the detective during the texting. Some rational fact-finder could find Appellant was the person behind the communications in the ad and the text chain.

**{¶22}** Next, it is claimed there was no evidence showing Appellant knew the texts were agreeing to a sexual encounter, contesting the element of sexual activity for hire with the applicable mental state for the offense of soliciting. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Because intent dwells in the defendant's mind, the surrounding facts, circumstances, and resulting inferences are the traditional indicators of a defendant's mens rea. *Treesh*, 90 Ohio St.3d at 485. When inferring intent from the circumstances surrounding the crime, the

defendant's conduct occurring before and after the offense can be considered as well. *State v. Johnson*, 93 Ohio St.3d 240, 245 (2001).

{¶23} The soliciting statute defines "sexual activity for hire" as "an implicit or explicit agreement to provide sexual activity in exchange for anything of value paid to the person engaging in such sexual activity, to any person trafficking that person, or to any person associated with either such person." R.C. 2907.24(D). The offered "sexual activity" can be "sexual conduct or sexual contact, or both." R.C. 2907.01(C).

{¶24} Sexual conduct is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." R.C. 2907.01(A) ("Penetration, however slight, is sufficient to complete vaginal or anal intercourse."). Sexual contact means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶25} We incorporate here our factual review in our Statement of the Case above and in our analysis of the "solicit" element of the soliciting offense below. We emphasize Appellant advertised for paid professional companionship services while listing penis size and various sexual activities, including giving and receiving anal and oral sex. Appellant replied to texts (sent to the phone number Appellant listed in the ad) which sought "full service . . . 1 or 2 hr raw." For this "basic" request, Appellant demanded $220 an hour or $350 for two hours and agreed to travel to a hotel where the client indicated he was excitedly waiting. A rational trier of fact could find beyond a reasonable doubt that Appellant's solicitation conduct (see below) knowingly corresponded to sexual activity for hire; i.e., Appellant "knowingly solicit[ed] another to engage in sexual activity for hire in exchange for [Appellant] receiving anything of value from the other person." R.C. 2907.24(A).

{¶26} Appellant's brief alternatively argues the evidence at most shows Appellant merely agreed to a sexual invitation by a soliciting detective. Appellant relies on an

interpretation of a First District case holding that mere acquiescence with another's offer to have sex for hire does not satisfy the solicit element for the offense of soliciting.

**{¶27}** The element of "solicit" for the crime of soliciting is properly defined in the Ohio Jury Instructions: "to seek, to ask, to influence, to invite, to tempt, to lead on, or to bring pressure to bear." *Ohio Jury Instructions*, CR § 507.07(2) (Rev. Dec 5, 2015). Our district regularly utilizes this definition of the word solicit, which is found throughout multiple sections of the Ohio Jury Instructions. *See, e.g., State v. Boyd*, 2022-Ohio-4749, ¶ 20, fn. 3 (7th Dist.) (applying an instruction containing this same definition for the "solicit" element of the crime of importuning); *State v. Smith*, 2017-Ohio-2708, ¶ 24 (7th Dist.) (applying an instruction containing this same definition for the "solicit" element of complicity). We note the parties utilize a definition of solicit set forth in case law originally applying a former uniform instruction: "to entice, urge, lure or ask." *See, e.g., State v. Swann*, 142 Ohio App.3d 88, 89, fn. 2 (1st Dist. 2001), quoting Former *Ohio Jury Instructions*, CR § 507.24 (1997).

**{¶28}** In the cited First District case, a police officer's testimony was interpreted to mean he offered to pay the defendant money or drugs for oral sex (without a prior offer by her); when she indicated her agreement with the offer of money, he asked if $10 was enough prompting her to ask for $15. *Swann* at 89. The state in that appeal suggested the soliciting statute is violated any time a person agrees to have sex for money. However, the First District opined the plain statutory language "solicit another" is not equivalent to "agree with another" which is how the court categorized the defendant's conduct. *Id.* (framing the state's argument as a redrafting of the statute while noting criminal statutes are interpreted strictly against the state). The court then said: "in a soliciting case, the crime is the asking. Swann was the solicitee, not the solicitor. Although she agreed to the solicitation, the specific crime with which she was charged does not prohibit acceptance, only entreaty." *Id.* at 90. Focusing on the initial offer (or "original solicitation"), the court found the defendant did not ask the officer for anything but "simply agreed to his suggestion." *Id.* at 89-90.

**{¶29}** It has been opined the *Swann* defendant was exonerated not because the officer suggested the particular sexual activity and price, but because the defendant merely agreed to the officer's advances. *State v. Short*, 2017-Ohio-7200, ¶ 30-32 (2d

Dist.), citing *Columbus v. Myles*, 2005-Ohio-3933, ¶ 24 (10th Dist.) (upholding a soliciting conviction where: two undercover officers parked a vehicle after noticing the defendant standing on a corner dressed in a certain way; the defendant approached, asked what they were seeking, and invited them to a house; when an officer asked what they would do there, the defendant asked how much money they had; when the officer responded by naming an amount and a sex act, the defendant agreed); *City of Cleveland v. Beasley*, 2010-Ohio-769, ¶ 25 (8th Dist.) (also stating the defendant need not explicitly refer to sexual activity for hire).

**{¶30}** As Appellant recognizes, the Second District consistently rejects the First District's *Swann* case to the extent the case intended to hold "the State has the burden to demonstrate that a person accused of soliciting prostitution not only offered to engage in sexual activity for hire but initiated an offer that was complete in those terms." *State v. West*, 2009-Ohio-6270, ¶ 21 (2d Dist.). "The conduct that R.C. 2907.24 prohibits is the offer. *Whether it is done in the form of an initial offer, a counter offer, or in response to an open inquiry, is immaterial.*" (Emphasis added.) *State v. Wendling*, 2022-Ohio-496, ¶ 20 (2d Dist.), quoting *West* at ¶ 20.

**{¶31}** Our district reviewed a defendant's reliance on the First District's *Swann* case and pointed to the Second District's rejection of it in a case where the defendant-masseuse in *Pan* tapped the undercover officer's penis and asked if he wanted oil. *State v. Pan*, 2023-Ohio-3172, ¶ 5, 18 (7th Dist.). When the officer pointed to the defendant's mouth and vaginal area and asked if she did more than massage the penis, she replied in the negative, tapped his penis a third time, and said, "just massage." The officer then asked the price, and the defendant responded that it was up to each customer because some customers do not make as much money as others. The officer said he had no extra money that day and asked if $60 would be enough the next time to which the defendant agreed. *Id.* at ¶ 6.

**{¶32}** Our *Pan* decision declined to specifically reject the implications of *Swann* upon pointing out the *Pan* defendant was the person who initially made an inquiry of the officer (posing as a client) as to whether he wished to engage in sexual activity, and we concluded there was sufficient evidence the defendant asked, urged, enticed, or lured the officer to engage in sexual activity for hire and thereby committed the offense of soliciting.

*Id.* at ¶ 18 (applying the definition of soliciting set forth in the *Swann* case cited by the defendant). *See also State v. Zhang*, 2023-Ohio-3173, ¶ 22 (7th Dist.) (finding sufficient evidence of soliciting where the defendant initiated sexual activity with the detective when she grabbed his penis without being asked to do so and responded to the detective's inquiry on cost by saying the cost was as much as the customer wanted to pay).

**{¶33}** We note the First District subsequently clarified its position by observing although the "crime is in the asking" not in the agreeing, "[t]he fact that the officer was the first one to state a dollar amount does not negate [the defendant's] role in the exchange." *State v. Bennett*, 2015-Ohio-3246, ¶ 9, 11 (1st Dist.). In *Bennett*, the defendant asked an undercover officer if she was working and said he was looking for someone who would be regularly available; the officer asked what he was looking for and what he was willing to pay; the defendant asked the charge for ordinary sexual activities at the officer's home; and the defendant then agreed to the officer's rate and planned to meet later). *Id.* at ¶ 1.

**{¶34}** Here, Appellant advertised online as a local provider of "personal companionship" services to be paid for with "Cash, Cashapp" while supplying penis size in inches. The ad referred to giving and receiving oral and anal sex among other sexual references and activities. The officer texted the phone number in this advertisement and inquired about availability that night. Appellant replied by asking the type of service desired. When asked the price for "full service" of "1 or 2 hr raw," Appellant gave an hourly price range. Appellant then asked for the specific town and hotel in order to quote the definite price of $220 for one hour or $350 for two hours. Appellant also prompted the detective to agree to two hours by indicating another person was requesting service from a nearby hotel, which prompted the detective to ask to be first in line.

**{¶35}** Contrary to Appellant's argument, Appellant did not merely acquiesce to an offer when she posted the aforementioned advertisement with a phone number, quoted an hourly price range when an inquiry for availability was made to that phone number for "full service . . . 1 or 2 hr raw," quoted a more definite fee based on location, encouraged the choice of a longer appointment length, and traveled to the site. Appellant's conduct legally fell within the definition of the element of "solicit" pertinent to the soliciting offense: "to seek, to ask, to influence, to invite, to tempt, to lead on, or to bring pressure to bear." *Ohio Jury Instructions*, CR § 507.07(2) (Rev. Dec 5, 2015). The conduct also satisfied

the overlapping former definition (discussed above): "to entice, urge, lure or ask." *See, e.g., Swann*, 142 Ohio App.3d at 89, fn. 2, quoting Former *Ohio Jury Instructions*, CR § 507.24 (1997).

**{¶36}** This case is not merely about advertising online but involves additional conduct of texting prices from the number posted online, driving to the arranged location, and entering the officer's hotel room. The detective noted they would not have pursued the case had Appellant decided not to show up at the hotel room. However, contrary to Appellant's contention, this disclosure does not limit what evidence can be considered on each element in the case (or provide a binding legal principle for the prosecution). Appellant's decision to drive to the hotel and enter the room number provided by the detective at the appointed time helped establish Appellant's intent to follow through with the arrangement discussed in the texts, which were prompted and influenced by the advertisement. As pointed out above, reasonable inferences are evaluated in the light most favorable to the prosecution, and circumstantial evidence is no less important than direct evidence. *Goff*, 82 Ohio St.3d at 138; *Filiaggi*, 86 Ohio St.3d at 247; *Treesh*, 90 Ohio St.3d at 485. The question for sufficiency is merely whether "any" rational trier of fact could have found the contested element satisfied beyond a reasonable doubt. *State v. Getsy*, 84 Ohio St.3d 180, 193 (1998), quoting *Jackson*, 443 U.S. at 319.

**{¶37}** Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude beyond a reasonable doubt that Appellant knowingly solicited another to engage in an implicit or explicit agreement to provide sexual activity in exchange for value paid to Appellant. *See* R.C. 2907.24(A), (D). The trial court did not err in denying the motion for acquittal and finding there existed sufficient evidence to support the offense of soliciting. Accordingly, the first two assignments of error are overruled.

ASSIGNMENT OF ERROR THREE

**{¶38}** Appellant's third assignment of error alleges:

"The Court committed reversible error, as the conviction of Plaster was adverse to the manifest weight of the evidence presented at trial."

**{¶39}** Weight of the evidence deals with the effect of the evidence in inducing belief; it concerns "the inclination of the greater amount of credible evidence, offered in a

trial, to support one side of the issue rather than the other." *Thompkins*, 78 Ohio St.3d at 387. A manifest weight of the evidence review considers whether the state met its burden of persuasion. *Id.* at 390 (Cook, J., concurring) (as opposed to the burden of production involved in a sufficiency or legal adequacy review).

**{¶40}** When a defendant claims the conviction is contrary to the manifest weight of the evidence, the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Lang*, 2011-Ohio-4215, ¶ 220, citing *Thompkins* at 387.

**{¶41}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 2011-Ohio-6524, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. This is because the trier of fact occupies the best position from which to weigh the evidence and judge witness credibility by observing gestures, voice inflection, and demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). When more than one competing interpretation of the evidence is available and the one chosen by the fact-finder is not unbelievable, we do not choose which theory we believe is more credible and impose our view over that of the trier of fact. *State v. Baker*, 2020-Ohio-7023, ¶ 148 (7th Dist.).

**{¶42}** The state urges the fact that the trial court found Appellant not guilty of the first-degree misdemeanor but guilty of soliciting showed the court did not just "blindly follow the state's theory of the case" or otherwise lose its way. *See State v. Callihan*, 2022-Ohio-2082, ¶ 31 (7th Dist.). Contrary to Appellant's contention, it was not "counterintuitive" to find Appellant guilty of soliciting in count two with a mental state of knowingly but not guilty of engaging in prostitution in count one, emphasizing this count had a lower mental state of recklessness. As set forth above, the trial court's written entry reasoned the offense charged in count one would be more appropriately titled procuring another to engage in prostitution and deals with a scenario where the defendant induces another to engage in sexual activity for hire and *the defendant gives the item of value* to the person induced. R.C. 2907.231(B). In any event, the only offense before this court on appeal is soliciting.

Case No. 24 NO 0515

{¶43} Appellant's photograph was posted with the advertisement, the phone number in the advertisement was used to text with the detective including to receive the detective's hotel room number and to provide the detective progress reports, and Appellant arrived at the hotel room as scheduled and reported. The lack of evidence on the phone number's registration is not concerning in weighing the evidence. Using a regularly registered phone number to conduct a prostitution business would not be an expected behavior. Likewise, this is not the type or level of case where the state would ordinarily attempt to subpoena cell phone tower pinging records.

{¶44} It was not contrary to the manifest weight of the evidence for the trial court to believe Appellant had the requisite intent and knowingly solicited another to engage in an implicit or explicit agreement to provide sexual activity in exchange for value paid to Appellant. *See* R.C. 2907.24(A), (D). The trial court heard the detective's testimony, viewed the advertisement, and read the texts. In the detective's experience, the requested "full service" meant full sex and "raw" meant without a condom. It was within the judge's province to believe this interpretation of the terminology under all of the facts and circumstances existing in this case.

{¶45} The fact-finder can also consider the price per hour demanded by Appellant in making reasonable inferences. The trial court watched Appellant testify and was able to evaluate Appellant's demeanor, voice inflection, eye movements, gestures, and other indicators of truthfulness along with the conflicts, admissions, and suggestions within Appellant's testimony. The court was in the best position to determine if various claims in that testimony were untrue, including the final claim that sex was not the intent upon arriving at the hotel. In fact, as the state points out, much of Appellant's testimony was not favorable to the defense.

{¶46} We incorporate here the factual review set forth in our Statement of the Case and our review of various facts in analyzing the prior assignments of error. Upon reviewing the entire record and weighing the evidence, including witness credibility and all reasonable inferences, we cannot conclude this is the exceptional case where the trial court clearly lost its way in resolving any conflicts and created such a manifest miscarriage of justice that a new trial must be ordered. *See Lang*, 2011-Ohio-4215, ¶ 220, citing *Thompkins*, 78 Ohio St.3d at 387. Accordingly, the decision to convict Appellant of

Case No. 24 NO 0515

soliciting was not contrary to the manifest weight of the evidence, and this assignment of error is overruled.

{¶47} For the foregoing reasons, the trial court's judgment of conviction is affirmed.


Waite, J., concurs.

Hanni, J., concurs.

———————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the County Court of Noble County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**