**[Cite as *State v. Pan*, 2023-Ohio-3172.]**

IN THE COURT OF APPEALS OF OHIO
SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

State of Ohio                                          Court of Appeals No.  22MA00082

        Appellee                                   Trial Court No.  2022 CR B 00056

v.

Haidan Pan                                            **DECISION AND JUDGMENT**

        Appellant                                  September 7, 2023

* * * * *

Edward A. Czopur, Assistant Prosecuting Attorney, for appellee.

Kevin Daley, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Following a bench trial, defendant-appellant, Haidan Pan, appeals the July 1, 2022 judgment of the Mahoning County Court No. 5, Canfield, Ohio, convicting her of soliciting and sentencing her to five days in jail and a term of community control.  For the following reasons, we affirm the trial court judgment.

# I.     Background

{¶ 2} According to the evidence presented by the state at trial, in March of 2022, law enforcement conducted an investigation of the Lucky Foot Massage in Beaver Township, Mahoning County, Ohio.  There were concerns that illegal sexual conduct, sexual contact for money, prostitution, or human trafficking may be occurring on the premises.  Detective Daniel Haueter, working as an undercover agent, went to the establishment on March 4, 2022, and March 10, 2022, with a body wire and controlled money to be used for the purchase of a massage.  The events of his March 10, 2022 visit are the subject of Mahoning County Court No. 5 case No. 2022 CRB 57.  The events of his March 4, 2022 visit are at issue here.

{¶ 3} On March 4, 2022, Detective Haueter entered the lobby of Lucky Foot Massage.  There was no employee in the reception area to greet him.  A curtain separated the hallway from the lobby.  A woman later identified as Haidan Pan came out from behind the curtain to greet him.  She took him into the hallway and directed him to a room on the right side of the hallway.  He was not asked to complete any paperwork.

{¶ 4} Pan asked Detective Haueter how long a massage he wanted.  He said a half-hour.  She told him it would be $45.  He gave her $50.  Pan told him to disrobe, and left the room.  Detective Haueter disrobed and laid face down on the table.  He draped a towel over his buttocks, lower back, and upper thighs.  Pan returned and set the $5 change on a stand and started to massage his upper body.

2.

**{¶ 5}** About half-way through the massage, Pan told Detective Haueter to roll onto his back. He still had the towel on. She started to massage his upper body. She then took her hand and tapped his penis over the towel and asked if he wanted oil. There was a language barrier, so Detective Haueter gestured toward his chest and asked Pan if she was asking if he wanted oil on his chest. She tapped his penis again and said "oil." He pointed to her vaginal area and her mouth and asked if she did more than just a massage of the penis. She said no and tapped his penis again and said "just massage."

**{¶ 6}** Detective Haueter asked Pan how much it would be. She said however much the customer wanted to pay. She said some people don't make as much money and some people make more, so it is up to the customer how much to pay. Detective Haueter told her he didn't have any extra money, but said he would come back. Pan told him her name was Candy and he said he would ask for her when he came back. He asked if $60 would be okay for the return visit.

**{¶ 7}** Detective Haueter testified that once it was established that he had no extra money, the massage of his penis was no longer an option—it was not included as part of the $45 price for the massage. Although he conceded that there was no agreement for the exact price Pan required to massage his penis, in his experience, that massage would cost additional money. He opined that if he would have paid the additional money, the sexual act would have occurred.

3.

**{¶ 8}** Detective Haueter returned to the Lucky Foot Massage on March 10, 2022, but was led to a different room by a different woman, later identified as Stephanie Zhang. While Haueter was on the table for a massage by Zhang, Pan entered the room to bring him change for that massage. When she saw the detective, she remembered him and told him that she would see him next time.

**{¶ 9}** The trial court convicted Pan of solicitation, a violation of R.C. 2907.24(A), a third-degree misdemeanor. She was sentenced to five days in jail, placed on community control for 12 months, and ordered to perform two hours of community service.

**{¶ 10}** Pan assigns the following error for our review:

> The Trial Court erred in entering a guilty verdict as there was insufficient evidence to support such a finding.

## II.     Law and Analysis

**{¶ 11}** In her sole assignment of error, Pan argues that her conviction is not supported by sufficient evidence. She claims that she "never brought up money, never asked Detective Haueter for money, did not offer to perform a sex act for money, and even after Detective Haueter asked her how much she would charge for the sex act she gave no price." She insists that she agreed to take money only after being prompted by the detective. Pan maintains that the crime of soliciting is in the asking, and she never asked for money in exchange for performing a sex act.

4.

**{¶ 12}** Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker,* 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978). "Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13. Naturally, this requires "a review of the elements of the charged offense and a review of the state's evidence." *Id.*

**{¶ 13}** R.C. 2907.24(A) prohibits a person from "knowingly solicit[ing] another to engage in sexual activity for hire in exchange for the person receiving anything of value from the other person." Under R.C. 2907.24(D), "sexual activity for hire" means "an implicit or explicit agreement to provide sexual activity in exchange for anything of value paid to the person engaging in such sexual activity, to any person trafficking that person, or to any person associated with either such person."

**{¶ 14}** Pan cites *State v. Swann,* 142 Ohio App.3d 88, 753 N.E.2d 984 (1st Dist.2001), in support of her position that she did not solicit Detective Haueter. In *State*

5.

*v. Swann,* the defendant was walking down the street when an officer pulled along the curb and engaged her in conversation.  He invited her into his car.  At first, they talked about topics of a non-sexual nature, but the officer eventually asked her if she wanted to "trade off crack * * * instead of money" for oral sex.  *Id.* at 89.  The defendant told the officer she wanted money.  The officer asked how much it would cost, and they went back and forth on the price—he suggested $10, but she said she wanted $15.  At that point, the officer signaled for his partner who arrested the defendant.  She was charged with soliciting.

{¶ 15} The First District Court of Appeals began by recognizing that to "solicit" means to "entice, urge, lure or ask."  *Id.*  It considered whether the defendant "solicited" the officer to engage in sexual activity for hire.  The state's position was that "any time a person *agrees* to have sex for money, the statute is violated."  (Emphasis in original.)  *Id.* But the court explained that the statute prohibited "solicit[ing] another" to engage in sexual activity for hire—not "agree[ing] with another" to engage in sexual activity for hire.  *Id.*  Because the statute prohibits "soliciting"—not agreeing"—the court refused to interpret the statute in the manner urged by the state.  And because the defendant "did not 'entice, urge, lure or ask' the officer for anything"—"[s]he simply agreed to his suggestion"—the court characterized the defendant as "the solicitee, not the solicitor." *Id.* at 89-90.  Accordingly, it reversed her conviction for lack of sufficient evidence.

6.

{¶ 16} The state maintains that there was sufficient evidence of soliciting here. It insists that the present case is different from *Swann* because Pan—not the detective—first suggested sexual activity in exchange for money. The state maintains that even though Pan did not demand an exact price, she did indicate that the sexual act would cost more than just the massage itself, and she agreed to a fee of $60 for the next time. It highlights the following facts: (1) the detective was not asked for his name, identification, or to complete any paperwork before the massage; (2) the detective was told to completely disrobe but for a towel that would cover his genital area; (3) the detective testified that in his experience, massage parlors that offer sexual favors often use code; (4) Pan tapped the detective's penis at least three times asking if he wanted "oil" and confirming that this would cost extra; and (5) Pan made arrangements with the detective for a second visit, agreeing to a price of $60 for the "oil."

{¶ 17} As an initial matter, not all districts agree with the First District's position that solicitation requires the defendant to have initiated the offer. For instance, the Second District has "rejected the contention that a person accused of soliciting must not only offer to engage in sexual activity for hire, but must also have 'initiated an offer that was complete in those terms.'" *State v. Short,* 2017-Ohio-7200, 144 N.E.3d 1037, ¶ 32 (2d Dist.), quoting *State v. West*, 2d Dist. Montgomery No. 22966, 2009-Ohio-6270, ¶ 21. The court explained that "[t]he conduct that R.C. 2907.24 prohibits is the offer. Whether it is done in the form of an initial offer, a counter offer, or in response to an

7.

open inquiry, is immaterial." *Short* at ¶ 32; *West* at ¶ 22; *State v. Wendling,* 2d Dist. Montgomery No. 29074, 2022-Ohio-496, ¶ 20.

{¶ 18} But we need not decide which approach is preferable here because under the facts of this case, a reasonable fact-finder could conclude that Pan "entice[d], urge[d], lure[d] or ask[ed]" the officer to engage in sexual activity for hire. The state's evidence, if believed, demonstrates that Pan initiated sexual activity with Detective Haueter when, without being asked to do so, she tapped on Detective Haueter's penis and asked if he wanted "oil." It was clear that Pan was willing to massage the detective's penis with oil, but expected additional compensation, as evidenced by her response to Detective Haueter that the cost for this sexual activity was as much as the customer wanted to pay—she did not say that it cost nothing. The price she indicated she was willing to accept was $60. Upon seeing Detective Haueter in the establishment a second time, she told him she would see him next time.

{¶ 19} Under these facts, we conclude that a reasonable trier of fact could have found the essential elements of solicitation proven beyond a reasonable doubt. We find Pan's sole assignment of error not well-taken.

### III.    Conclusion

{¶ 20} The detective testified that he paid for a 30-minute massage, 15 minutes into the massage, Pan offered to massage the detective's penis with oil, and Pan's response to the detective's inquiry about the cost for the sexual activity demonstrated that

8.

she expected additional payment and ultimately agreed to engage in that activity for $60. The state presented sufficient evidence of solicitation and we find Pan's assignment of error not well-taken.

{¶ 21} We affirm the July 1, 2022 judgment of the Mahoning County Court #5, Canfield, Ohio. Pan is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.                        _____
                                                JUDGE
Gene A. Zmuda, J.

Myron C. Duhart, P.J.                       _____
CONCUR.                                                  JUDGE

                                                _____
                                                JUDGE

Judges Christine E. Mayle, Gene A. Zmuda, and Myron C. Duhart, Sixth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.